[Cite as *U.S. Bank, N.A. v. Courthouse Crossing Acquisitions, L.L.C.*, 2017-Ohio-9231.]


**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**


| | | |
|---|---|---|
| U.S. BANK NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE FOR | : | |
| THE REGISTERED HOLDERS OF GE | : | Appellate Case No. 27648 |
| COMMERCIAL MORTGAGE | : | |
| CORPORATION, COMMERCIAL | : | Trial Court Case No. 2016-CV-5346 |
| MORTGAGE PASS-THROUGH | : | |
| CERTIFICATES, SERIES 2006-C1, | : | (Civil Appeal from |
| ACTING BY AND THROUGH ITS | : | Common Pleas Court) |
| SPECIAL SERVICER, LNR | : | |
| PARTNERS, LLC | : | |

     *Plaintiff-Appellee*

v.

COURTHOUSE CROSSING
ACQUISITIONS, LLC, et al.

     *Defendants-Appellants*


. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of December, 2017.

. . . . . . . . . .

JAMES P. BOTTI, Atty. Reg. No. 0023051, and JARED M. KLAUS, Atty. Reg. No. 0087780, 41 South High Street, Suite 3100, Columbus, Ohio 43215
     Attorneys for Plaintiff-Appellee

TAMI HART KIRBY, Atty. Reg. No. 0078473, 1 South Main Street, Suite 1600, Dayton, Ohio 45402

Attorney for Plaintiff-Appellee

ROBERT R. KRACHT, Atty. Reg. No. 0025574, CHARLES J. PAWLUKIEWICZ, Atty. Reg. No. 0011499, and NICHOLAS R. OLESKI, Atty. Reg. No. 0095808, 101 West Prospect Avenue, Suite 1800, Cleveland, Ohio 44115
Attorneys for Defendants-Appellants

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendants-Appellants, Courthouse Crossing Acquisitions, LLC and Schon C.C. Holdings (collectively, "Crossing") appeal from a summary judgment rendered in favor of Plaintiff-Appellee, U.S. Bank National Association, as Trustee for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Passthrough Certificates, Series 2006-C1, acting by and through Its Special Servicer, LNR Partners, LLC ("U.S. Bank").   Crossing contends that the trial court erred in granting summary judgment in favor of U.S. Bank because there are genuine issues of material fact concerning whether U.S. Bank is the holder of a promissory note, and with respect to how the original lender transferred the note to U.S. Bank.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in favor of U.S. Bank.   There were no genuine issues of material fact concerning whether the bank was the holder of the promissory note, or how the original lender transferred the note.   In addition, Crossing was precluded from asserting alleged failure to comply with a services and pooling agreement that purportedly involved the note, because Crossing was a third party to the agreement.   Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 3} In October 2016, U.S. Bank filed a foreclosure action against Courthouse Crossing Acquisition, LLC, Schon C.C. Holding, and the Montgomery County Treasurer. The complaint alleged that U.S. Bank held a $12,700,000 promissory note that Crossing had signed, as well as a mortgage and security agreement on premises located at 10 North Ludlow Street, Dayton, Ohio. In addition, the complaint alleged that U.S. Bank owned security interests in Crossing's personal property due to UCC-1 financing statements filed with the State of Ohio and Montgomery County, Ohio.

{¶ 4} U.S. Bank also filed a motion for appointment of a receiver, which was granted in November 2016. Crossing has also appealed that decision. *See* U*.S. Bank National Assn. v. Courthouse Crossing Acquisition LLC*, 2d Dist. Montgomery No. 27331.

{¶ 5} In November 2016, Crossing filed a motion to dismiss the complaint, based on alleged lack of jurisdiction. The trial court overruled this motion in January 2017. Subsequently, U.S. Bank filed a motion for summary judgment in March 2017. The motion was supported by the affidavit of Dmitry Sulsky, asset manager of LNR Partners, which was the special servicer for the loan held by U.S. Bank. On April 5, 2017, the trial court granted Crossing's motion for an extension of time under Civ.R. 56(F), and extended the time for responding to May 22, 2017. Crossing filed a brief in response to the summary judgment motion on May 22, 2017. The brief was supported by the affidavit of Crossing's counsel, who identified various documents obtained in discovery as well as excerpts from a form 8-K that had been filed with the Securities and Exchange Commission ("SEC").

{¶ 6} In mid-June 2017, the trial court granted U.S. Bank's Motion for Summary Judgment. The court then filed a judgment entry issuing a foreclosure decree on July

29, 2017. This appeal followed.

## II. Alleged Error in Rendering Summary Judgment

{¶ 7} Crossing's sole assignment of error states that:

The Trial Court Erred as a Matter of Law When It Granted U.S. Bank's Motion for Summary Judgment.

{¶ 8} Under this assignment of error, Crossing contends that the trial court erred in rending summary judgment in favor of U.S. Bank because there were genuine issues of material fact concerning whether U.S. Bank is a holder of the Crossing promissory note. Crossing's argument is based on the existence of a Pooling and Servicing Agreement ("PSA") that pertained to the Series 2006-C1 Trust ("Trust").

{¶ 9} According to Crossing, the PSA required the Depositor (identified as GE Commercial Mortgage Corporation, or "GE") to assign various loans, including Crossing's loan, to the Trust. Crossing further notes that an entity called German American Capital Corporation ("GACC") "purportedly" sold Crossing's loan to GE. Crossing states that U.S. Bank failed to produce any evidence that the original lender, Deutsche Bank Mortgage Capital, LLC ("Deutsche"), sold its rights in the note and mortgage to GACC, so that GACC then had rights to sell to GE. Based on these alleged facts, Crossing argues that there are genuine issues of material fact concerning the chain of title. The trial court rejected this argument, noting that Crossing was not a party to the assignments of the notes and mortgage, and lacked standing to challenge their validity.

{¶ 10} "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving

party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 11} When a mortgagor defaults, a mortgagee "may elect among separate and independent remedies to collect the debt secured by a mortgage." (Citations omitted.) *Deutsche Bank Natl. Tr. Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 21. These remedies include: (1) suits seeking personal judgments against mortgagors to recover amounts due on promissory notes, without resorting to the property that has been mortgaged; (2) actions to enforce mortgages, which are for the mortgagee's excusive benefit and for those claiming under the mortgagee; and (3) "based on the property interest created by the mortgagor's default on the mortgage, the mortgagee may bring a foreclosure action to cut off the mortgagor's right of redemption, determine the existence and extent of the mortgage lien, and have the mortgaged property sold for its satisfaction." (Citations omitted.) *Id.* at ¶ 22-24.

{¶ 12} The case before us involves the third remedy, which is a foreclosure action asking that the property be sold. However, a " 'foreclosure proceeding is the enforcement of a debt obligation,' * * * and the debt is established by the note." *Id.* at ¶ 27, quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d

396, at ¶ 17. In *Holden*, the court concluded that a bank could proceed in foreclosure against a debtor who had been discharged from any obligation on a promissory note in bankruptcy proceedings, so long as the bank could prove that "it is the party entitled to enforce the note – regardless of whether it can obtain a personal judgment on it against the [obligors]." *Holden* at ¶ 27.

{¶ 13} " 'To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due.' " *Nationstar Mtge., L.L.C. v. West*, 2d Dist. Montgomery Nos. 25813, 25837, 2014-Ohio-735, ¶ 16, quoting *Wright–Patt Credit Union, Inc. v. Byington*, 6th Dist. Erie No. E-12-002, 2013-Ohio-3963, ¶ 10. (Other citations omitted.)

{¶ 14} U.S. Bank presented such materials, by authenticating the various documents attached to the complaint. The promissory note, which is dated February 23, 2006, was originally entered into by Deutsche and Crossing. It required Crossing to pay Deutsche and Deutsche's "successors and/or assigns" $12,700,000. Doc. #51, March 20, 2017 Sulsky Affidavit, Ex. 1, Promissory Note, p. 1. The payments were to be made in various installments, with the balance of the "principal sum and all accrued and unpaid interest" to be paid on March 1, 2016. *Id.*

{¶ 15} The promissory note also referenced an open-end leasehold mortgage and security agreement which was being used to secure the obligations evidenced in the promissory note. *Id.* at p. 2. Consistently, the mortgage and security agreement

referenced the promissory note. *See* Sulsky Affidavit, ¶ 6-7 and Ex. 2 attached to the affidavit, p. 2.

{¶ 16} Another Sulsky affidavit, attached to U.S. Bank's motion for appointment of a receiver, stated that U.S. Bank was the owner and holder of the promissory note, the mortgage and security agreement, and an assignment of rents and leases that were attached to the Complaint and that Crossing had executed on February 23, 2006, to secure the $12,700,000 loan. October 7, 2016 Affidavit of Dmitry Sulsky, ¶ 2-3, attached to Doc. #7 in 2d Dist. Montgomery App. Case No. 27331, and identifying the copies of the note and mortgage attached to the Complaint.[1]

{¶ 17} Sulsky further stated in his summary judgment affidavit that after the note was delivered to Deutsche, it was first assigned and transferred by Deutsche to LaSalle Bank National Association ("LaSalle"), as trustee for the Trust, pursuant to an allonge that was attached to the note. Doc. #51, March 20, 2017 Sulsky Affidavit, ¶ 4-5. LaSalle then assigned and transferred the note to Wells Fargo Bank, N.A ("Wells Fargo"), as trustee for the Trust, again through an allonge. *Id.* at ¶ 5. Finally, Wells Fargo assigned and transferred the note to U.S. Bank, through an allonge. *Id.* Copies of the note and the allonges were attached both to the complaint and summary judgment motion, and the note was in U.S. Bank's possession at these times.

{¶ 18} Sulsky further stated that the original mortgage for the Crossing property was recorded on February 24, 2006, with the Montgomery County, Ohio Recorder's Office. March 20, 2017 Sulsky Affidavit, ¶ 7, and Ex. 2 to the Sulsky Affidavit.

---

[1] Unless designated otherwise, the docket references are to the current case, which is 2d Dist. Montgomery No. 27648.

Consistent with the above assignments and transfers of the note, Deutsche assigned the mortgage to LaSalle; LaSalle then assigned the mortgage to Wells Fargo; and finally, Wells Fargo assigned the mortgage to U.S. Bank. These assignments were recorded, respectively, on April 10, 2006, July 22, 2008, and October 8, 2009, and were attached to the Complaint and to Sulsky's affidavit. March 20, 2017 Sulsky Affidavit, ¶ 8; Complaint, Exs. C-E; Sulsky Affidavit, Exs. 3-5.

{¶ 19} The UCC-1 financing statements, which were also assigned and transferred, with the final transfer being to U.S. Bank, were identified and attached both to the Complaint and to Sulsky's affidavit. March 20, 2017 Sulsky Affidavit, ¶10-15; Complaint, Ex. F; Sulsky Affidavit, Ex. 6.

{¶ 20} In the case before us, no one disputes that the promissory note was a negotiable instrument. Under R.C. 1303.31(A), the parties entitled to enforce a negotiable instrument are: "(1) The holder of the instrument; (2) A nonholder in possession of the instrument who has the rights of a holder; (3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code."

{¶ 21} A "holder" " 'means either of the following: (a) If the instrument is payable to the bearer, a person who is in possession of the instrument; (b) If the instrument is payable to an identified person, the identified person when in possession of the instrument.' " *Flagstar Bank, F.S.B. v. Richison*, 3d Dist. Union No. 14-12-01, 2012-Ohio-3198, ¶ 15, quoting R.C. 1301.01(T)(1)(a) and (b).[2]  In this case, U.S. Bank was a

---

[2] In *Richison*, the court noted that "R.C. 1301.01 was repealed by 2011 Am.H.B. No. 9, effective June 29, 2011. That act amended the provisions of R.C. 1301.01 and renumbered that section so that it now appears at R.C. 1301.201." *Richison*, 3d Dist.

"holder," because it was in possession of a negotiable instrument that was made payable to an identified person (U.S. Bank).

{¶ 22} Crossing concedes that U.S. Bank is in possession of the original note and alonges. Crossing Brief, p. 7. However, Crossing contends that U.S. Bank is not entitled to enforce the note because of defects in the chain of title. In this regard, Crossing relies on the fact that the "Note and Mortgage were *purportedly* part of a securitization whereby New York investment bankers and commercial banks pooled together large numbers of commercial mortgage loans, where the loans were to be sold to a depositor, and this depositor was to then deposit the mortgage loans in the common law trust * * *." (Emphasis added.) *Id.* at p.9.

{¶ 23} As an initial point, "purported" facts are not facts for purposes of summary judgment. In opposing summary judgment, Crossing submitted only the affidavit of its attorney, who identified various documents and photos of documents he had obtained. Some documents, including a copy of an unsigned allonge, were obtained when the attorney reviewed U.S. Bank's trust file. Other documents were excerpts from "Form 8-K related to GE Commercial Mortgage Corporation, Series 2006-C1 from the Securities Exchange Commission." Doc. #57, Affidavit of Nicholas R. Oleski, ¶ 4.[3] The excerpts included parts of a Pooling and Services Agreement and a Mortgage Loan Purchase and

---

Union No. 14-12-01, 2012-Ohio-3198 at ¶ 15, fn.1. Because R.C. 1301.201 only applies to transactions entered on or after June 29, 2011, the court applied R.C. 1301.01, noting that "the R.C. 1301.201(B)(21)(a) definition of 'holder' is substantially similar to the R.C. 1301.01(T)(1)(a) and (b) definition of 'holder.' " *Id.* Like *Richison*, the transaction here occurred in 2009, prior to the amendment, so we will use the definition of "holder" in R.C. 1301.01(T)(1)(a) and (b). Again, the definitions are similar.

[3] The affidavit contains two paragraphs that are labeled "4." We are quoting the second paragraph 4.

Sale Agreement between GE and GACC. *Id.* at ¶ 5-6, referring to Exs. F and G.

{¶ 24} Ex. E is designated by Oleski's affidavit as the SEC certification page, but it contains some additional pages. One of these pages is entitled "Current Report" and is dated March 23, 2006. The report indicates that on March 23, 2006, a series of mortgage-based pass-through certificates were issued based on a PSA that was dated March 1, 2006. The parties to the PSA were GE, Wachovia Bank, National Association, LNR Partners, Inc., and LaSalle Bank, National Association. These parties were designated, respectively, as the depositor or registrant, the servicer, the special servicer, and trustee.

{¶ 25} According to the report, the certificates "evidence in the aggregate the entire beneficial interest in a trust fund * * * consisting primarily of 145 commercial or multifamily mortgage loans * * * having an aggregate principal balance as of the Cut-Off Date of approximately $1,608,803,744." Ex. E, p. 4, Item 8.01. Among the properties listed in the Mortgage Loan Schedule for the Series 2006-C1 Trust is Courthouse Crossing, 10 Ludlow Street. *See* Ex. G attached to the Oleski Affidavit, Mortgage Loan and Purchase Agreement, and Ex. A attached to the Mortgage Loan and Purchase Agreement, p.1.

{¶ 26} The point of Crossing's argument is that the chain of title is defective because it does not include the entities mentioned in the PSA and does not follow the chain of assignments that the PSA contemplates. One might glean from this a variety of possibilities, including that the registrant (GE) may have incorrectly represented assets that were not actually in the fund at the time of the SEC submission; that the entities involved may not have complied with the PSA and may not have transferred the assets into the fund as required by the document; that the loans were not actually transferred

into the trust yet, but were later transferred; or that the loans had been conveyed at some point to the trust.

**{¶ 27}** None of the materials submitted by Crossing offer any illumination concerning these possibilities, or perhaps others, except two letters. The first is a letter dated February 28, 2006, from Deutsche (the original lender) to LaSalle, sending LaSalle the original promissory note for the Crossing loan. The second is a letter dated May 15, 2006, from a legal assistant for Deutsche to LaSalle, transmitting the necessary assignments for the Crossing loan documents, including the mortgage, assignment of rents, and UCC-3 filings. These documents indicate a direct transmission of the pertinent materials, including the promissory note, from Deutsche to LaSalle, all of which supports U.S. Bank's position concerning the transfer of the promissory note. And, there is nothing indicating otherwise.

**{¶ 28}** As was noted, the trial court rejected Crossing's argument based on existing authority in this district. *See* Doc. #61, Decision, Order and Entry Granting Plaintiff's Motion for Summary Judgment, p. 9 and fn. 26, citing *Bank of New York Mellon v. Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975.

**{¶ 29}** In *Clancy*, the party challenging the validity of a note and mortgage argued that the mortgage had been conveyed in violation of a trust. *Id*. at ¶ 10. We concluded that "even if the mortgage had been conveyed in violation of the trust, courts in Ohio have held that 'because a debtor is not a party to the assignment of a note and mortgage, the debtor lacks standing to challenge their validity.' " *Id*. at ¶ 33, quoting *Deutsche Bank Natl. Trust Co. v. Whiteman*, 10th Dist. Franklin No. 12AP-536, 2013-Ohio-1636, ¶ 16; which in turn, cited *LSF6 Mercury REO Invests. Trust Series 2008–1 c/o Vericrest Fin.,*

*Inc. v. Locke*, 10th Dist. Franklin No. 11AP-757, 2012-Ohio-4499, ¶ 28-29. We also cited *Bank of New York Mellon Trust Co. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 35; and *HSBC Bank USA v. Sherman*, 1st Dist. Hamilton No. C-120302, 2013-Ohio-4220, ¶ 21.

{¶ 30} We noted that the reasoning in these cases was "that the 'mortgage assignments did not alter the [debtors'] obligations under the note or mortgage. [The plaintiff] filed the foreclosure complaint based on the [debtors'] default under the note and mortgage, not because of the mortgage assignments. The [debtors'] default exposed them to foreclosure regardless of the party who actually proceeds with foreclosure. The [debtors], therefore, failed to show they suffered or will suffer any injury, the injury is traceable to the mortgage, and it is likely a favorable decision will remedy the injury.' " *Clancy* at ¶ 34, quoting *Unger* at ¶ 35.

{¶ 31} In *Unger*, the court also rejected the debtors' contention that because they did not know the identity of the true holder, they might have to make multiple payments to multiple parties who could seek foreclosure. *Id*. at ¶ 38. The court stated that "[c]ontrary to this assertion, [the debtors] are not at risk of paying twice because a creditor must establish the right to the note based on possession and proper chain of assignment. * * * Furthermore, 'if a maker makes a payment to a "person entitled to enforce", the obligation is satisfied on a dollar for dollar basis, and the maker never has to pay that amount again.' " *Id*., quoting *In re Veal*, 450 B.R. 897, 911, n. 22 (B.A.P. 9th Cir.2011). (Other citation omitted.)

{¶ 32} We have also made the same observations. *See Deutsche Bank Tr. Co. Americas v. Ziegler*, 2d Dist. Montgomery No. 26287, 2015-Ohio-1586, ¶ 37 (noting that

ownership of note (as opposed to entitlement to enforce) is not a debtor's concern); *West*, 2d Dist. Montgomery Nos. 25813, 25837, 2014-Ohio-735, at ¶ 29 (commenting that a person may be entitled to enforce a note even where the person is not the owner); *Wells Fargo Bank, N.A. v. Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269, ¶ 17 (borrower lacks standing to challenge validity of assignment of note and mortgage unless, for example, the note prohibits assignment); *Nationstar Mtge., L.L.C. v. Willis*, 2d Dist. Miami No. 2014-CA-36, 2016-Ohio-4721, ¶ 42 (debtors who are not parties to mortgage assignment lack standing to challenge its validity).

**{¶ 33}** By virtue of its possession of the original note, U.S. Bank was a party entitled to enforce the note.  To the extent that any of the materials Crossing submitted are relevant (and that is questionable), they indicate that Deutsche also assigned the mortgage to LaSalle, the apparent original named trustee of the Trust.  LaSalle then assigned the mortgage to Wells Fargo, who then assigned it to U.S. Bank in July 2009. The mortgage to U.S. Bank was recorded in October 2009 with the Montgomery County Recorder.  Thus, U.S. Bank was in possession of the original note, and the mortgage in its favor had also been recorded.  These events occurred before the foreclosure action was filed, and U.S. Bank's status remained unchanged when summary judgment was granted.

**{¶ 34}** Crossing argues that we should no longer apply our decision in *Clancy* because the Tenth District Court of Appeals has allegedly overruled a line of cases that the court had relied on in *Whiteman*, 10th Dist. Franklin No. 12AP-536, 2013-Ohio-1636. Crossing contends that the Tenth District Court of Appeals has now held that defendants have standing to challenge the validity of transfers of notes or assignments of mortgages.

The cited case is *U.S. Bank Natl. Assn. v. George*, 2015-Ohio-4957, 50 N.E.3d 1049 (10th Dist.) (*George I*), which allegedly overruled *Locke*, 10th Dist. Franklin No. 11AP-757, 2012-Ohio-4499).[4]

{¶ 35} As a preliminary point, we note that the three judges on the panel in *George I* are not the same judges who were on the panel in *Locke;* one judge in *George I* also disagreed that *Locke* needed to be overruled in its entirety. *George I* at ¶ 45 (Dorrian, J., concurring in judgment only). Thus, only two judges concurred in the decision to overrule a case decided by a prior panel. The Supreme Court of Ohio has indicated that "schisms have developed in districts as different panels announce conflicting opinions on identical issues of law, leaving litigants to guess which decision controls." *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, ¶ 15. The court has stressed that "[a]ppellate courts are duty-bound to resolve conflicts within the district through en banc proceedings." *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 18.[5]

---

[4] A motion for reconsideration in *George* was denied in 2016. See *U.S. Bank Natl. Assn. v. George*, 2016-Ohio-7788, 66 N.E.3d 788 (10th Dist.) (*George II*).

[5] The Supreme Court of Ohio has also said that a panel that decides a case may review en banc applications under App.R. 26 and decide if en banc panel consideration is warranted. *State v. Forrest*, 136 Ohio St.3d 134, 2013-Ohio-2409, 991 N.E.2d 1124, ¶ 14. Loc.R. 15 of the Tenth District Court of Appeals follows this procedure by allowing the more recent panel in conflicting cases to decide if a conflict exists, and the panel is required to issue a decision finding no conflict. For an example of this procedure in the Tenth District Court of Appeals, *see Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134, ¶ 24.

There is no indication in *George I* or *II* that en banc applications were filed or that decisions on this point were issued. In fact, the subject is not mentioned. Loc.R. 15 also requires a unanimous finding by the reviewing panel that no conflict exists. If even one member of the reviewing panel finds that a conflict exists, the entire en banc panel must consider the issue. *Id.* Notably, App.R. 26(A)(2)(b) also permits a majority of the

**{¶ 36}** As an example of the "schism" problem, subsequent decisions from the Tenth District Court of Appeals conflict with *George I*. *See Logansport Savs. Bank, FSB v. Shope*, 10th Dist. Franklin No. 15AP-148, 2016-Ohio-278, ¶ 17 (stating that " 'any violation of the pooling and services agreement is irrelevant in light of [mortgagee's] standing based on its possession of the promissory note,' " and that whether a violation of the pooling and servicing agreement was violated is irrelevant to a bank's standing as holder of a note) (Citations omitted.); *Deutsche Bank Natl. Tr. Co. v. Sopp*, 2016-Ohio-1402, 62 N.E.3d 863, ¶ 19 (10th Dist.) (trial court precluded mortgagor in foreclosure case from raising compliance with pooling agreement because he was not a party to the agreement. The court of appeals agreed, stating that "insofar as appellant is contending that Deutsche was not a valid holder of the note based on any non-compliance with or violation of a pooling and servicing agreement, we agree with the trial court that such argument is without merit.") As a result, the position of the Tenth District Court of Appeals is unclear.

**{¶ 37}** Putting this point aside, in *George I*, the Tenth District Court of Appeals reversed a summary judgment for a bank, due to "unexplained discrepancies" between the copy of a note attached to the complaint and a note that was attached to an affidavit filed in support of summary judgment. *Id.* at ¶ 34. In the course of its holding, which Judge Dorrian described as "dicta," the majority concluded that "a maker of a note or

---

en banc court to order en banc consideration sua sponte. Consequently, even if an en banc application is not filed, a court of appeals can resolve its own conflicts. One would assume that if a panel overrules a prior decision of another panel, a conflict would be found and an en banc decision would be issued that would assist litigants and other courts in determining what rules of law should be followed. This would be particularly important where a court of appeals subsequently issues other conflicting decisions.

mortgagor who is facing enforcement at law on the note or enforcement in equity on the mortgage has a personal stake in challenging whether a person claiming to be entitled to enforce such a note or a mortgage has been duly transferred or assigned rights under either or both instruments, regardless of whether or not the challenger is in privity with the person claiming the right to enforce." *Id.* at ¶ 26.

**{¶ 38}** In concluding that a debtor may so challenge a note's assignment, the majority stated that "*Locke's* holding is based in part on a line of federal court decisions that * * * has been modified by the Sixth Circuit Court of Appeals." *George I*, 2015-Ohio-4957, 50 N.E.3d 1049, at ¶ 27 and fn.5, citing *Livonia Properties Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F.Supp.2d 724 (E.D.Mich.2010), *aff'd*, 399 Fed.Appx. 97 (6th Cir.2010). The case that allegedly modified *Livonia Properties* was *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed.Appx. 249 (6th Cir. 2014). *George I* at ¶ 27.

**{¶ 39}** In *Slorp*, the Sixth Circuit Court of Appeals considered federal and state claims brought by a debtor, who alleged that a law firm, an employee of the firm, and a bank, had committed unfair and deceptive debt collection practices by filing an illegitimate foreclosure action in state court against the debtor. *Id.* at 252-253. After the district court dismissed the complaint and refused to let the debtor file an amended complaint for RICO violations, the debtor appealed. *Id.* at 253. The district court's dismissal was based on the conclusion that the debtor lacked standing to challenge validity of a mortgage assignment because he was not a party. *Id.*

**{¶ 40}** The Sixth Circuit first concluded that the debtor had Article III (federal question) standing because his injury was allegedly caused by improper mortgage

foreclosure, not by the false assignment of the mortgage, and this was cognizable based on violations of the Fair Debt Practices Collection Act, a federal statute. *Id.* at 253-254. Concerning the debtor's Ohio state claims like fraud, violation of the Ohio Consumer Sales Practices Act ("CSPA"), and conspiracy, the court noted that its prior decision in *Livonia Properties* had been interpreted too broadly and that the court should "clarify the circumstances under which a mortgagor can challenge the validity of an assignment that purports to assign the mortgagee's interest in the mortgage to another entity." *Slorp* at 254.

{¶ 41} The court then stated that the "type of standing" discussed in *Livonia Properties* "is a common-law analogue of statutory standing, wholly unrelated to Article III standing. It is entirely a creature of state contract law and is assessed in conjunction with the merits of the claim, not as a threshold issue." *Id.* The court agreed with the general statement in *Livonia Properties* that a party to an assignment lacks standing to challenge the assignment, but noted that it had "quickly limited the scope of that rule, clarifying that a non-party homeowner may challenge the validity of an assignment to establish the assignee's lack of title, among other defects." *Id.* at 255, citing *Livonia Properties,* 399 Fed.Appx at 102. (Other citation omitted.)

{¶ 42} In addition, the Sixth Circuit Court of Appeals distinguished *Livonia Properties* on this basis:

> *Livonia Properties* also does not govern Slorp's standing to assert the statutory claims that he alleged in his complaint. *Livonia Properties* discusses the defenses that are available to homeowners who face foreclosure – i.e., the circumstances in which a homeowner may impede

foreclosure by attacking the assignment of the mortgage. *See* 399 Fed.Appx. at 102–03 (relying in large part on 6A C.J.S. Assignments § 132, which is captioned "Defenses"). That opinion says nothing about when a homeowner may bring suit to seek redress for fraudulent or deceptive acts in connection with a foreclosure.

*Slorp*, 587 Fed.Appx. at 256.

**{¶ 43}** Ultimately, the Sixth Circuit Court of Appeals concluded that the debtor had statutory standing to bring state law claims for falsification, etc., based on the wording of the relevant Ohio statutes ("the CSPA, Ohio Rev.Code §§ 1345.02 and 1345.03; falsification in violation of Ohio Rev.Code § 2921.13; and civil conspiracy to commit falsification"). *Id.* at 256-257. The court found no merit to these claims, although it did conclude that the district court erred in refusing to let the debtor amend his complaint to allege RICO violations. *Id.* at 257-266. The case was, therefore, remanded so the debtor could amend the complaint. *Id.* at 266.[6]

**{¶ 44}** Whether *Slorp* actually "modified" *Livonia Properties* is questionable, particularly in light of later decisions and comments by the Sixth Circuit Court of Appeals. As one example, the Sixth Circuit Court of Appeals subsequently considered a foreclosure situation involving facts more closely akin to the case before us. *See Jones v. Select Portfolio Servicing, Inc.*, 672 Fed.Appx. 526 (6th Cir.2016). In *Jones*, the

---

[6] Subsequently, the Sixth Circuit Court of Appeals affirmed a summary judgment rendered in favor of the defendants on the RICO claims, noting its prior statement that "Slorp's claim would 'vanish' if defendant Bank of America was found to be a legitimate mortgagee." *Slorp v. Lerner, Sampson & Rothfuss,* 690 Fed.Appx. 905, 906 (6th Cir.2017), quoting *Slorp,* 587 Fed.Appx. at 264. The court then stated that "[t]he district court found Bank of America was a legitimate mortgagee, and we agree with its reasoning and result." *Id.*

plaintiff brought a declaratory judgment action in federal court against a lender, Wells Fargo, and a loan servicer, Select Portfolio Servicing, Inc., in an attempt to reverse the foreclosure of his home.   *Id.* at 528.

{¶ 45} The original lender had assigned the deed of trust to Wells Fargo as trustee for a Series 2004-FF8 Trust in 2013, which was several years after the loan documents were executed.   The original lender also transferred the promissory note to Wells Fargo. *Id.*   Because records indicated that the original lender was inactive and had surrendered its corporate status prior to the 2013 transfer, the plaintiff argued that the original lender could not have properly assigned the deed in 2013.   In addition, the plaintiff claimed that the deed's assignment violated the terms of a pooling and service agreement governing a trust that included the loan on his home.   *Id.*   After the district court dismissed the case, the plaintiff appealed to the Sixth Circuit Court of Appeals.

{¶ 46} Among other things, the district court had held that Wells Fargo had standing to foreclose because it had possession of the note.   The district court further held that the plaintiff lacked standing to challenge the validity of the deed assignment. *Id.* at 529.

{¶ 47} On appeal, the plaintiff made the same arguments about the ability to transfer the deed and the violation of the pooling services agreement.   However, the court of appeals rejected both arguments.   *Jones*, 672 Fed.Appx. at 531-534. Concerning the note, the court stated that "even assuming Jones's allegations are true, they fail to support a cognizable claim that Wells Fargo lacked standing to foreclose on the Property, since they do not refute Wells Fargo's possession of the Note at the time of the Property's foreclosure."   *Id.* at 531-532.   Likewise, in the case before us, there is no

dispute that U.S. Bank had possession of the note when the complaint was filed and when summary judgment was granted in its favor.[7]

**{¶ 48}** The court of appeals further stated that "to the extent Jones suggests that Wells Fargo's acquisition of the Note itself was wrongful, we find his claim similarly unviable: as discussed, a holder of a note endorsed in blank is entitled to enforce its terms, regardless of whether it is in 'wrongful possession' of the instrument." (Citation omitted.) *Id.* at 532.

**{¶ 49}** As an additional matter, the Sixth Circuit Court of Appeals concluded that the plaintiff lacked standing to raise challenges to the lender's ability to enforce the note based on defects in the deed assignment and compliance with the pooling service agreement. *Id.* at 533. In this regard, the court stated that "[t]he district court correctly recognized that, in general, borrowers who are not a party or intended third party beneficiary to a mortgage assignment or pooling and service agreement lack contractual standing to challenge these instruments or agreements." (Citations omitted.) *Id.*

**{¶ 50}** Although the plaintiff in *Jones* raised the prior decision in *Slorp*, the Sixth Circuit Court of Appeals described *Slorp* as a situation "where a panel of this court allowed an Ohio homeowner to raise a claim of fraud in connection with the assignment of his mortgage." *Jones*, 672 Fed.Appx. at 533. The court acknowledged that it had recognized exceptions to the general rule prohibiting attack of third-party contracts, but concluded that no exceptions applied to the plaintiff. Notably, the court stated that:

> As acknowledged in *Livonia*, [399 Fed.Appx. 97,] a loan obligor may,

---

[7] Although *Jones* involved Tennessee law, the pertinent law regarding transfer of notes is consistent with Ohio law. *Jones,* 672 Fed.Appx. at 532 (indicating that a "holder" of note is entitled to enforce it, even if in wrongful possession).

in limited circumstances, have standing to contest a loan assignment based on the "nonassignability of the instrument, assignee's lack of title, [or a] prior revocation of the assignment." 399 Fed.Appx. at 102 (citing 6A C.J.S., Assignments § 132 (2010)). Courts recognize such exceptions so that the obligor can protect herself from paying a debt twice. *Id.* (citing C.J.S., *supra*, § 132). But the key to applying these exceptions is a "genuine claim" that the entity seeking to enforce the loan is not its rightful owner. *See id.* Merely alleging flaws or technical defects in an assignment or a pooling and service agreement isn't enough.

*Jones*, 672 Fed.Appx. at 533.

**{¶ 51}** Finally, the court commented on the "unusual set of circumstances" in the Ohio foreclosure proceedings in *Slorp*, which included false executions of an assignment of mortgage and the dismissal of the foreclosure action after the debtor had noticed the deposition of the individual involved in the false assignment. *Id.* at 534. Because the debtors' allegations in *Jones* bore "little resemblance to these circumstances," the court was "unpersuaded that *Slorp* supports deviating from the general contractual standing rule * * *." *Id.* As a result, the court affirmed the dismissal of the plaintiff's claims. *Id.*

**{¶ 52}** Similarly, in *DAGS II, LLC v. Huntington Nat. Bank*, 616 Fed.Appx. 830, 836 (6th Cir.2015), the Sixth Circuit rejected a debtor's claim that was based on an assignment between its lender and another party. The court reiterated that "absent some claim that the Plaintiffs may be on the hook for double payment, this is precisely what courts do not permit." *Id.* These decisions are consistent with our prior decision in *Clancy*. *See Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975, at ¶ 33.

**{¶ 53}** The Seventh District Court of Appeals has also distinguished *George I* and *Slorp* because "they did not involve an argument concerning the pooling and servicing agreement. Rather, they involved problems with the note or assignment themselves." *U.S. Bank Natl. Assn. v. Crow*, 7th Dist. Mahoning No. 15-MA-0113, 2016-Ohio-5391, ¶ 70. We agree. As was noted by Judge Dorrian in *George I*, the majority's statements about standing were dicta, because the only issue before the court was whether genuine issues of material fact existed in a situation where the bank had submitted different versions of a note and the testimony of witnesses contradicted each other. *George I*, 2015-Ohio-4957, 50 N.E.3d 1049, at ¶ 39-44 (Dorrian, J., concurring in judgment only).

**{¶ 54}** Moreover, although the bank in *George I* asserted that it had attached a full copy of the promissory note to rectify the problem, the court of appeals found no copy of the note in the record. *George I* at ¶ 6-7. A representative of the plaintiff could not explain the discrepancy, and also testified that he thought an entity other than the plaintiff held the note. *Id.* at ¶ 30. The court, therefore, held that the bank was not entitled to summary judgment because it failed to submit evidentiary quality material to support its claim that it was the current holder of the note and mortgage. *Id.* at ¶ 17-18 and 29-31.[8]

**{¶ 55}** In contrast, Crossing admits that U.S. Bank possessed the note, and there is no dispute about the fact that the mortgage assignments, ending in an assignment to U.S. Bank, were properly recorded. Accordingly, even if the majority's comments in

---

[8] On reconsideration, the majority also rejected the bank's argument that it was a non-holder in possession, which was an argument the majority had previously deemed waived. *George II*, 2016-Ohio-7788, 66 N.E.3d 788, ¶ 2 (10th Dist.). This decision was based on lack of evidence in the record. *Id.* at ¶ 12-13 and 25. Judge Dorrian again concurred in judgment only, as she concluded that the bank had waived this issue. *Id.* at ¶ 32 (Dorrian, J., concurring in judgment only).

*George I* were not dicta, they simply do not apply in this case.

**{¶ 56}** On reconsideration in *George II*, the majority did tangentially mention pooling agreements. As was noted, the majority rejected the bank's argument that it was a non-holder in possession, which had previously been deemed waived. *George II*, 2016-Ohio-7788, 66 N.E.3d 788, at ¶ 2. The conclusion that summary judgment was still not warranted was based on the lack of evidence of a certificate of merger between two of the involved entities, and because the merged entity had endorsed the note to a party other than the foreclosing bank prior to the merger, meaning that the successor by merger may not have had the ability to subsequently endorse the note. *Id.* at ¶ 12-13 and 25.

**{¶ 57}** During the course of its discussion, the majority commented that it did "not adhere to holdings that purport to prevent foreclosure defendants from pointing out that a plaintiff's proof falls short of establishing an entitlement to enforce." *Id.* at ¶ 14. As examples of such holdings, the majority cited several out-of-state federal district court cases, primarily from Minnesota, which held that persons who are not parties to pooling and servicing agreements do not have standing to challenge those agreements. *Id.* at ¶ 14, fn.2.

**{¶ 58}** As in *George I*, Judge Dorrian concurred in the judgment only. Her reasoning this time was that the bank had waived the nonholder in possession argument by failing to assert it. *Id.* at ¶ 35 (Dorrian, J., concurring in judgment only). Judge Dorrian then stated that she was writing to address part of the majority opinion that she found "particularly troubling in light of prior analyses by this court and well-reasoned precedent from other courts." *Id.* at ¶ 36. The troubling point related to the majority comments, as related above, about standing.

{¶ 59} In this regard, Judge Dorrian stated that:

I disagree with the majority's assessment of the effect of the holding [in the cases noted in footnote 2]. A homeowner's lack of standing to challenge a trust agreement (also known as a pooling and servicing agreement or PSA) does not impede the homeowner from attacking a bank's entitlement to enforce the note. Statutes -- not trust agreements – set forth the criteria a bank must prove to demonstrate that it is the person entitled to enforce the note. *See* R.C. 1301.201(B)(21); 1303.21; 1303.22; 1303.31. Consequently, whether a trust agreement is valid, and whether the bank complied with the trust agreement, have no relevance in the determination of whether the bank is the person entitled to enforce the note. *George II*, 2016-Ohio-7788, 66 N.E.3d 788, at ¶ 37 (Dorrian, J., concurring in judgment only).

{¶ 60} Judge Dorrian also commented that:

Furthermore, the majority's rejection of the cited holding contravenes well-reasoned law. *See Dauenhauer v. Bank of N.Y. Mellon*, 562 Fed.Appx. 473, 480 (6th Cir.2014) ("Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing."); *U.S. Bank Natl. Assn. v. Aguilar-Crow*, 7th Dist. No. 15 MA 0113, 2016-Ohio-5391, ¶ 67 ("Various courts have concluded a debtor lacks 'standing' to challenge whether the transfer of the mortgage loan to the trust complied with the pooling and

servicing agreement."); *HSBC Bank USA Natl. Assocs. v. Sherman*, 1st Dist. No. C-120302, 2013-Ohio-4220, ¶ 21 ("But [the homeowner] is not a beneficiary under the PSA and has no right to claim that [the bank] failed to comply with the terms of the PSA.").

*George II*, 2016-Ohio-7788, 66 N.E.3d 788, at ¶ 38 (Dorrian, J., concurring in judgment only).

{¶ 61} Finally, Judge Dorrian again remarked that, as with *George I*, rejection of the cited holding of the federal district courts was not necessary to resolve the issue before the court. *Id.* at ¶ 39. We agree. And, as mentioned earlier, if the Tenth District Court of Appeals wished to overrule existing contrary authority, it should have done so pursuant to an en banc panel of the court. *McFadden*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, at ¶ 15; *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 18. Again, this did not occur, and the majority's comments in *George I* and *II* are dicta.

{¶ 62} As a final point, a panel of the Tenth District Court of Appeals had already apparently attempted to limit (not overrule) *Locke* and *Whiteman* in *Bank of Am., N.A. v. Pasqualone*, 10th Dist. Franklin No. 13AP-87, 2013-Ohio-5795. There, the court explained that "in cases where R.C. Chapter 1303 applies, a debtor may challenge the assignment of a note (by negotiation * * * or transfer* * *) if such challenge fits the criteria of a denial, defense or claim in recoupment as outlined in R.C. 1303.36 or 1303.35." (Footnotes omitted.) *Id.* at ¶ 35, purportedly limiting *Whiteman*, 10th Dist. Franklin No. 12AP-536, 2013-Ohio-1636, ¶ 16, *Locke*, 10th Dist. Franklin No. 11AP-757, 2012-Ohio-4499, ¶ 28-29, and *JPMorgan Chase Bank, N.A. v. Romine*, 10th Dist. Franklin No. 13AP-

58, 2013-Ohio-4212, ¶ 13.   Thus, debtors are not without some avenues of attack.[9]

{¶ 63} We discussed *Pasqualone* in *Ziegler*, 2d Dist. Montgomery No. 26287, 2015-Ohio-1586, and concluded that even if the debtors could challenge the note's assignment, their alleged "meritorious defenses" under Civ.R. 60(B) did not meet the criteria for "a denial, defense or recoupment claim found in R.C. 1303.35 or 1303.36." *Id.* at ¶ 46, citing *Pasqualone* at ¶ 36.   The same reasoning applies here.   There is no indication in the record that Crossing's arguments fit within R.C. 1303.35 or R.C. 1303.36. Crossing did not make such arguments in the trial court and has not mentioned these statutes on appeal.

{¶ 64} In the past, we have also held that a nonholder of a note who possesses a note may enforce a note and mortgage.   *Wells Fargo Bank, N.A. v. TIC Acropolis, L.L.C.*, 2d Dist. Greene Nos. 2015-CA-32, 2015-CA-33, 2016-Ohio-142, ¶ 33.   In *TIC*, we agreed with the bank that a mortgage assignment and omnibus agreement were sufficient to allow the bank standing to bring a foreclosure action, as a non-holder, even if the allonge in question was insufficient to negotiate the note.   *Id.* at ¶ 33-35.

{¶ 65} Quoting *LaSalle Bank Natl. Assn. v. Brown*, 2014-Ohio-3261, 17 N.E.3d 81 (2d Dist.), we stated that:

---

[9] We say "purportedly limited" because, like *George I* and *II*, *Pasqualone* was a decision of only two judges. *See Pasqualone*, 10th Dist. Franklin No. 13AP-87, 2013-Ohio-5795. In that case, one panel member commented that limiting the court's prior holdings was unnecessary.   *Id.* at ¶ 50 (Sadler, J., concurring separately).   In view of the conflicting views expressed, it is unclear whether any of these cases (*Whiteman*, *Locke*, *Romaine*, *Pasqualone*, or *George I* or *II*) represents the current law in the Tenth District Court of Appeals.   Crossing has suggested that if we choose not to overrule our prior decision in *Clancy*, we should certify a conflict.   Under the circumstances, there would be no way to discern exactly what to certify or whether any conflict potentially exists.

"[A] person need not be a 'holder' of the instrument in order to be entitled to enforce it. Instead, a person can be a nonholder in possession of the instrument who has the rights of a holder. This status can be bestowed in various ways. As was noted in the case of *In re Veal*, 450 B.R. 897 (9th Dist.Ariz. BAP2011):

'Non-UCC law can bestow this type of status; such law may, for example, recognize various classes of successors in interest such as subrogees or administrators of decedent's estates. *See* Comment to UCC § 3-301. More commonly, however, a person becomes a nonholder in possession if the physical delivery of the note to that person constitutes a "transfer" but not a "negotiation." *Compare* UCC § 3-201 (definition of negotiation) with UCC § 3-203(a) (definition of transfer). Under the UCC, a "transfer" of a negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument." UCC § 3-203(b). As a result, if a holder transfers the note to another person by a process not involving an Article 3 negotiation - such as a sale of notes in bulk without individual indorsement of each note - that other person (the transferee) obtains from the holder the right to enforce the note even if no negotiation takes place and, thus, the transferee does not become an Article 3 "holder." *See* Comment 1 to UCC § 3-203.' "

*TIC* at ¶ 33, quoting *Brown* at ¶ 36.

**{¶ 66}** Consistent with this discussion, R.C. 1303.22 provides that:

(A) An instrument is transferred when it is delivered by a person other

than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(B) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a direct or indirect transfer from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

{¶ 67} In the case before us, Crossing signed a note and a mortgage agreement with Deutsche. Both the note and mortgage reference each other. *See* Note, Section 2, page 2; Open-End Leasehold Mortgage and Security Agreement, p. 2.

{¶ 68} Article XIII (Remedies) of the mortgage stated as follows:

13.1 <u>Remedies Available</u>. If an Event of Default Occurs, then Mortgagee may, at its option, exercise any or all of the following rights or remedies, either successively or concurrently, all of which shall be cumulative, including:

(a) <u>Acceleration</u>. Declare any or all of the Debt to be immediately due and payable.

(b) <u>Entry</u>. Either in person or by agent, with or without bringing any proceeding, or by a receiver and without regard to the adequacy of its security, enter upon and take possession of the Mortgaged Property.

\* \* \*

(e) <u>Foreclosure</u>. Commence an action to foreclose this Mortgage

or to specifically enforce its provisions with respect to any of the Debt and sell or cause to be sold the Mortgaged Property in accordance with Applicable Law in one or more parcels. Mortgagee may bid the Debt and all other obligations secured by the Mortgage in a foreclosure sale hereunder.

(f) <u>Judicial Remedies</u>. Proceed by suit, at law or in equity, to enforce the payment of the Debt or other obligations of Mortgagor under this Mortgage or the other Loan Documents and to have the Mortgaged Property sold under the judgment or decree of a court of competent jurisdiction.

(g) <u>Other Remedies</u>. Exercise any other right or remedy available under the Loan Documents, at law or in equity.

Open-End Leasehold Mortgage and Security Agreement at p. 23, attached to the Foreclosure Complaint as Ex. B and authenticated by the Sulsky Affidavit, ¶ 6-7.

**{¶ 69}** Further, on March 8, 2006, Deutsche Bank, the original mortgagor, assigned the mortgage and security agreement to LaSalle Bank, as Trustee for the Trust. Deutsche assigned all of its rights and interest in the agreement, "*[t]ogether with the bonds or notes or obligations described in said Mortgage* and Assignment of Leases, * * * and any and all other related security instruments which secure the indebtedness and/or obligations secured by said Mortgage and Assignment of Leases." (Emphasis added.) Ex. C, pp. 1-2, attached to the Complaint and authenticated by the Sulsky Affidavit, ¶ 9. This assignment was filed with the Montgomery County recorder on April 10, 2006, and evidenced an intention to transfer the right to enforce the note, even if "negotiation" had not occurred (although it had).

{¶ 70} Subsequently, on June 30, 2008, LaSalle, as Trustee for the Trust, executed a similar assignment to Wells Fargo Bank, N.A., and the assignment was recorded on July 22, 2008.   *See* Ex. D attached to the Complaint and authenticated by the Sulsky Affidavit, ¶ 9.   Finally, Wells Fargo executed a similar assignment to U.S. Bank on July 6, 2009, and the assignment was recorded on October 8, 2009.   *See* Ex. E attached to the Complaint and authenticated by the Sulsky Affidavit, ¶ 9.

{¶ 71} Consequently, under the reasoning in *TIC*, even if U.S. Bank had been a nonholder, it possessed the note, which had been transferred to it, as well as the rights under the mortgage, and had the right to enforce the note.

{¶ 72} In arguing that the trial court erred in rendering summary judgment in U.S. Bank's favor, Crossing also contends that genuine issues of material fact exist because a "closing binder" in U.S. Bank's file contained an allonge from the original lender, Deutsche, that was blank.   Oleski Affidavit at ¶ 5 and Ex. D attached to the affidavit. Crossing further notes that a "custodial file checklist" for the closing memorandum on the Crossing/Deutsche loan referenced an "[a]llonge in blank."   *See* Ex. B attached to the Oleski Affidavit.   According to Crossing, the existence of a blank allonge creates a genuine issue of material fact because of "discrepancies" between this and the allonge that was later specifically endorsed by Deutsche to LaSalle.   We disagree as to the relevance of this fact.

{¶ 73} The content of the "checklist" is hearsay, and Crossing failed to provide any evidence in compliance with Civ.R. 56(C) to explain the content.   *See, e.g., E.W. v. T.P.*, 6th Dist. Lucas Nos. L-11-1301, L-11-1302, 2012-Ohio-5805, ¶ 13 ("Unauthenticated notes, reports, or letters are not admissible within any of the hearsay rule exceptions to

prove the truth of the information contained in such documents.") Crossing was given an extension of time to reply to summary judgment in the trial court and clearly had time to conduct discovery and submit admissible evidence.

{¶ 74} Even if this were otherwise, the fact that Deutsche possessed a blank allonge that identified it as an "assignor" is irrelevant. The copy of the allonge in the file identifies Deutsche as the assignor and is not signed. The space for the assignee is also blank. Oleski Affidavit, Ex. D.

{¶ 75} The original promissory note that Crossing signed was made payable to the order of Deutsche, and was payable on demand or at a definite time, which made it a negotiable instrument under R.C. 1303.03(A). "A promise or order that is payable to order is payable to the identified person." R.C. 1303.10(C). "An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person." R.C. 1303.25(A).

{¶ 76} To further negotiate the promissory note, Deutsche would have had to endorse the note and transfer possession. " 'Negotiation' means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). "Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." R.C. 1303.21(B).

{¶ 77} Deutsche could accomplish this by endorsing the note to bearer or by endorsing it to a specific party, and, in either instance, transferring possession. *See* R.C. 1303.10(D); R.C. 1303.24; R.C. 1303.25; R.C. 1303.21(B).

{¶ 78} An allonge is a method of endorsing a note, and is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Chase Home Fin., LLC v. Fequiere*, 119 Conn.App. 570, 577, fn.7, 989 A.2d 606 (Conn.App.2010), quoting Black's Law Dictionary (9th Ed. 2009). However, " '[a]n indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement.' " *HSBC Bank USA v. Thompson*, 2d Dist. Montgomery No. 23761, 2010-Ohio-4158, ¶ 65, quoting 1990 official comments for UCC 3-204, which is the analogous statute to R.C. 1303.24.

{¶ 79} In view of the above discussion, the fact that a blank allonge, unsigned by Deutsche as an assignor, existed and/or was possessed by Deutsche or any other party at some point, is irrelevant. Deutsche was the original payee on the promissory note, and the only way the note could have been negotiated thereafter was for Deutsche to sign the allonge as assignor and make it payable to bearer or to an identified party. An unsigned allonge was meaningless, and from that perspective, it matters not whether the file contained one or one hundred unsigned copies of the allonge.

{¶ 80} Theoretically, a third party could have filled in its own name as the assignee, and could have forged the signature of an individual authorized to endorse promissory notes on Deutsche's behalf. However, Crossing presented no evidence that such an unlikely event occurred. Instead, the properly substantiated evidence indicates that Deutsche endorsed the note to LaSalle, who then endorsed it to Wells Fargo. In turn, Wells Fargo endorsed the note to U.S. Bank, and also transferred possession of the note. Accordingly, we find no merit in Crossing's argument pertaining to the allonge.

{¶ 81} Based on the preceding discussion, Crossing's sole assignment of error is overruled.


IV.   Conclusion

{¶ 82} Crossing's sole assignment of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . .


HALL, P.J. and TUCKER, J., concur.


Copies mailed to:

James P. Botti
Jared M. Klaus
Tami Hart Kirby
Robert R. Kracht
Charles J. Pawlukiewicz
Nicholas R. Oleski
Michele D. Phipps
Hon. Timothy N. O'Connell