## A–1 NURSING CARE OF CLEVELAND, INC., Appellant,

### v.

## FLORENCE NIGHTINGALE NURSING, INC. ET AL., Appellees.

[Cite as *A–1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.* (1994), 97 Ohio App.3d 623.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66328.

Decided Oct. 17, 1994.

624

*Howard M. Hackman,* for appellant.

*Michael R. Perme,* for appellees.

HARPER, Presiding Judge.

## I

Appellant, A–1 Nursing Care of Cleveland, Inc. ("A–1"), appeals from the summary judgment granted in favor of appellees, Florence Nightingale Nursing, Inc. ("Nightingale"), Karen Peters and Diane Hass, on its complaint for interference with a contract.   For the reasons that follow, we reverse and remand.

A–1 was incorporated under the laws of Ohio on July 30, 1987 as a nursing care agency.   Karen Peters was employed by A–1 as its director of nursing on September 12, 1988.   On the date of employment Peters signed a nondisclosure agreement with A–1.   The disclosure agreement prohibits Peters from soliciting "for employment of any facility or client whose name has been supplied to me by the Agency or to whom I have been assigned through the Agency." [1]   It also forbids Peters to accept "any employment from any client or facility whose name has been supplied to me or to whom I am or have been assigned to by the Agency within 90 days from and after my termination of employment with the Agency, I shall request written consent to do so from the Agency."

A–1's complaint alleged that Peters violated the agreement by incorporating Nightingale on September 14, 1989, soliciting clients of A–1 and luring a number of A–1 clients to Nightingale.   She was also alleged to have used a confidential client list of A–1 to her own advantage, in violation of the agreement.

On June 23, 1993 appellees filed a motion for summary judgment claiming that A–1 had no standing to sue.   They reasoned that since the Ohio legislature

---

1.  Agency as used in the agreement refers to A–1.

amended R.C. 1785.01(B) to allow only licensed individuals to operate professional associations, A–1 cannot sue because its sole shareholder was not a licensed nurse. The trial court granted appellees' motion based on appellant's lack of standing to sue.

## II

Appellant assigns the following errors for our review:

"The trial court erred when it found as a matter of law that appellant, A–1 Nursing Care of Cleveland, Inc., did not have standing and dismissed its claims in contravention of Ohio R.Civ.P. 17

"A. The defendant is not entitled to summary judgment pursuant to Ohio R.Civ.P. 56, as Ohio R.Civ.P. 17 controls.

"B. The trial court erred when it found that the appellant, A–1 Nursing Care of Cleveland, Inc., lacked standing."

Appellant challenges the trial court's grant of summary judgment for the reason that it did not have standing to file a complaint against appellees.

The law of summary judgment is settled in Ohio. Summary judgment cannot be granted absent a showing by the moving party that (1) the opposing party has not presented any material issue of fact for litigation, (2) the moving party is entitled to judgment as a matter of law, and (3) in weighing the evidence in the light most favorable to the nonmoving party, reasonable minds can come to but one conclusion and that conclusion must be adverse to the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793; Civ.R. 56(C); see, also, *Morris v. Ohio Cas. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904, 906. A trial court commits a reversible error in granting a summary judgment where the moving party is not entitled to judgment as a matter of law, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 324, 4 O.O.3d 466, 470, 364 N.E.2d 267, 272.

There is a foregone legal conclusion that a party filing a motion for summary judgment premises his motion on the understanding that the court has jurisdiction to entertain the motion; hence, the issue before the court is not that of jurisdiction but whether there are sufficient issues of material significance in the complaint to submit to the trier of fact. It is this unique requirement of Civ.R. 56 that makes a motion for summary judgment an improper procedure for challenging standing. A review of appellant's complaint reveals that there are unquestionably genuine issues of material fact as to whether appellee violated the disclosure agreement. Thus, a motion to dismiss pursuant to Civ.R. 12 rather than a motion for summary judgment is the appropriate procedure for raising the

defense of lack of standing to sue.  See *Kowalezyk v. Walsh* (1979), 482 F.Supp. 959.

■ Summary judgment terminates a party's action on the merits and a subsequent filing of an action decided on summary judgment is prohibited by the doctrine of *res judicata*, whereas the motion to dismiss for lack of standing terminates the action other than on the merits and affords proper parties the opportunity to refile without fear of the effects of *res judicata*.  Therefore, Civ.R. 56 is inapplicable to decide a legal issue of standing and a court faced with this issue must rule on it within the framework of Civ.R. 12.  See *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 616 N.E.2d 519.  The trial court, therefore, was in error in granting summary judgment.

### III

■ We are also not persuaded by appellees' argument that appellant lacked standing to sue because its sole shareholder is not a licensed nurse and therefore it could not legally operate as a business under the provisions of R.C. 1785.01 as amended.

In *GMS Mgt. Co. v. Axe* (1982), 5 Ohio Misc.2d 1, 5 OBR 53, 449 N.E.2d 43, the court held that "the legal existence of a corporation begins with the filing of the articles of incorporation.  R.C. 1701.04(D).  It is this legal existence that gives the corporation the legal capacity to sue.  R.C. 1701.13(A)."  A review of the record in the instant case shows that appellant's articles of incorporation were not cancelled, and there is no indication that appellant has ceased to carry on the business for which it was incorporated, that of nursing care agency.

R.C. 1.58 provides as follows:

"(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:

"(1) Affect the prior operation of the statute or any prior action taken thereunder;

"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

"(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

"(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment;  and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

"(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

We are not prepared to go as far as appellees in holding as a matter of law that appellant cannot sue in its capacity as a corporation because of the 1992 amendment to R.C. 1785.01, by 1991 Am.H.B. No. 344, eff. March 2, 1992, as we do not read anything in the amendment that invalidated all corporations that were formed before the amendment. In including nurses and other professionals within the reach of R.C. 1785.01 the legislature was well aware that there were care agencies that were formed whose sole shareholders may not have been licensed individuals. If the legislature intended to forbid pre–1992 incorporated care agencies whose shareholders were not licensed individuals to exist as professional corporations, it could have done so. Its failure to banish them indicated its willingness to accommodate other methods of keeping them in existence while complying with the requirements of the amended statute. However, the power to render them illegal remains that of the legislature and should not be exercised by the judiciary, since they are not creatures of the court.

Our reasoning is further bolstered by 1985 Ohio Atty.Gen.Ops. No. 85–065, which states the following in the syllabus:

"R.C. Chapter 1785 does not prohibit the stock of a professional association from being held in trust, for the benefit of nonprofessionals, by an individual who is duly licensed or otherwise legally authorized to render the professional service for which the association was organized, and the fact that stock is so held provides no basis for cancellation of the articles of incorporation of that association by the Secretary of State. Since the trustee is a professional, however, he may not carry out any acts or exercise any powers which conflict with the performance of his professional responsibilities or exceed the authority granted to him under applicable law."

Although this court is not bound by the advisory opinion of the Attorney General and does not consider it the law of the state, we do agree with the statement of the law contained therein. As we stated above, it is this court's belief that the legislature did not intend by the 1992 amendment to R.C. 1785.01 to outlaw all professional corporations formed before 1992 whose shareholders are not licensed individuals, but intended to bring them in compliance with its intent of placing licensed professionals at the helm of those corporations. It may become necessary to allow those sole shareholders who are not licensed individuals to have their stock held in trust and the corporations managed by licensed individuals.

In deposition testimony, Patel indicated that he has a licensed registered nurse as a director and a supervisor. As a matter of fact, appellee, Karen Peters, a registered nurse, was employed as the director of nursing.

Therefore, having found no legislative intent to outlaw professional corporations formed before the 1992 amendment to R.C. 1785.01 whose shareholders are not licensed individuals, and there being no record from either the Attorney General or any appropriate state agency declaring the operation of such corporations illegal, we hold that until they are made illegal by the legislature, these corporations remain legitimate and can sue and be sued in the state of Ohio.

Appellant's assignment of error is sustained, the trial court's judgment is reversed and this cause is remanded for trial on the merits.

*Judgment accordingly.*

KRUPANSKY and MATIA, JJ., concur.