[Cite as *Rhododendron Holdings, L.L.C. v. Harris*, 2021-Ohio-147.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RHODODENDRON HOLDINGS, LLC, et al. | : | |
| | : | |
| | : | Appellate Case No. 28814 |
| Plaintiffs-Appellants | : | |
| | : | Trial Court Case No. 2017-CV-5825 |
| v. | : | |
| | : | (Civil Appeal from |
| THOMAS BRADLEY HARRIS, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2021.

. . . . . . . . . .

JAMES H. GREER, Atty. Reg. No. 0046555 and MATTHEW M. SUELLENTROP, Atty. Reg. No. 0089655, 6 North Main Street, Suite 400, Dayton, Ohio 45402
    Attorney for Plaintiffs-Appellants

DANIEL J. RUDARY, Atty. Reg. No. 0090482, 75 East Market Street, Akron, Ohio 44308
    Attorney for Defendants-Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1} Rhododendron Holdings, LLC appeals from the trial court's entry of summary judgment against it on its second amended complaint, which alleged trade-secret violations and raised numerous claims against the appellees.[1]

{¶ 2} Rhododendron advances four assignments of error. First, it contends the trial court erred in entering summary judgment without first ruling on a pending motion to compel discovery. Second, it claims the trial court erred in entering summary judgment on two counts in the second amended complaint alleging violations of the Ohio Uniform Trade Secrets Act. Third, it argues that the trial court erred in dismissing with prejudice under Civ.R. 56 two counts alleging breach of contract. Fourth, it asserts that the trial court erred in dismissing three other counts with prejudice under Civ.R. 56 where the appellees' summary-judgment motion simply incorporated by reference arguments raised in a prior Civ.R. 12(B)(6) motion to dismiss.

{¶ 3} The present appeal stems from Rhododendron's 74-page, 15-count second amended complaint filed on April 15, 2019. That complaint raised legal claims against appellees Thomas Bradley Harris, Andrew Rynearson, John Diamond, The Progressive Orthopedic Company, LLC, and Modal Manufacturing Company, LLC. Despite the lengthy complaint, the detailed history set forth in the parties' briefs, and the existence of thousands of pages of exhibits and depositions, the essential issues of fact and law underlying the present appeal are relatively narrow.

---

[1] We note that the June 4, 2020 notice of appeal in this case actually was filed by Rhododendron and a third-party defendant, Douglas S. Hawkins, who apparently is challenging the trial court's denial of a competing summary-judgment motion. For ease of reference, we will refer to the appellants collectively as "Rhododendron."

{¶ 4} The record reflects that a company called NovoSource developed, manufactured, and sold FDA-approved artificial knee and hip replacements. Appellees Harris, Diamond, and others were directors of NovoSource. Diamond also served as the company's general counsel. In addition to his duties at NovoSource, Harris played a leading role in other companies, including Skeleton Crew Manufacturing, LLC ("SCM"). NovoSource and SCM were parties to a distribution agreement under which SCM purchased and resold NovoSource products. Part of that agreement gave SCM a conditional, non-exclusive license to manufacture and sell NovoSource products if NovoSource ceased operations.

{¶ 5} In order to market its products, NovoSource required "510(k) clearance" from the FDA. That streamlined process involved developing a product from an existing device so that the two products were "substantially equivalent" although not necessarily identical. NovoSource ultimately created two knee implants and two hip implants through the 510(k) process and spent several million dollars developing the underlying intellectual property known as "design-history files."

{¶ 6} When NovoSource began marketing its devices, SCM was its biggest distributor. Harris subsequently formed The Progressive Orthopedic Company, LLC ("TPOC") in 2013, and TPOC acquired SCM in its entirety. In addition to his role as NovoSource's general counsel, Diamond served as TPOC's outside legal counsel. NovoSource continued its business relationship with the combined TPOC/SCM.

{¶ 7} Later in 2013, TPOC/SCM fell behind on payments to NovoSource, causing or contributing to financial distress for NovoSource. Diamond resigned from his role as a NovoSource board member and as the company's general counsel in February 2014.

Around that time, NovoSource's largest secured lender, the Dayton Regional Signature Fund, threatened to sue NovoSource and to foreclose on a $1.12 million loan to the company. Given the uncertainty surrounding NovoSource's future, Harris also began seeking to obtain NovoSource's design-history files for his own use. Harris made multiple requests for the files between January and June 2014.

{¶ 8} NovoSource CEO Andrew Cothrel discussed giving Harris the files with NovoSource board chairman Harold Linville, who opposed the idea. While Harris was seeking the design-history files, NovoSource began exploring a sale of the company to salvage some value. In July 2014, healthcare company Cardinal Health agreed to buy NovoSource for $12 million. The proposed transaction needed approval from NovoSource's board of directors, which included Harris. It was known that Cardinal Health was not going to use TPOC/SCM as a distributor if the sale occurred. Cothrel feared that Harris might vote to block the sale. Cothrel also knew Harris claimed a right to the NovoSource design-history files under the terms of SCM's earlier distributor agreement with NovoSource. Cothrel additionally knew that Cardinal Health viewed Harris' claimed right to the design-history files as a potentially deal-killing issue.

{¶ 9} Cothrel eventually decided to send Harris NovoSource's design-history files on a flash drive. The files were sent to "Brad Harris/The Progressive Orthopedic Company" in North Palm Beach, Florida on August 25, 2014. When he sent the files, Cothrel knew that Harris would not be using them on behalf of NovoSource. Rather, Cothrel knew that Harris wanted the files to help him pursue a post-NovoSource life. According to Cothrel, he and Harris agreed to limitations on Harris' use of the design-history files. One such restriction was that any product Harris developed could not be

identical to a NovoSource product. But Cothrel did not sent Harris or TPOC anything in writing on August 25, 2014 or later placing restrictions on the use of the design-history files. Cothrel nevertheless believed that adequate protections were in place to maintain the overall secrecy and confidentiality of the design history files when he gave them to Harris.

{¶ 10} After receiving the design-history files, Harris used them to pursue TPOC's own 510(k) submissions to the FDA. Beginning in September 2014, TPOC began applying to the FDA for 510(k) clearances based on NovoSource's knee and hip designs. TPOC's applications were identical to NovoSource's earlier applications, and the products TPOC later manufactured after obtaining FDA approval were essentially identical to NovoSource's products. In January 2015, NovoSource's board of directors learned that TPOC had submitted 510(k) applications based on NovoSource's designs. At some point, the NovoSource design-history files were transferred from TPOC to Modal Manufacturing Company, LLC, with which Harris also was associated.

{¶ 11} Several months before Cothrel sent Harris the NovoSource design-history files, Rhododendron acquired the notes securing the Dayton Regional Signature Fund's $1.12 million loan to NovoSource. In December 2014, Rhododendron sued NovoSource to foreclose on the notes and received a $3 million cognovit judgment. Rhododendron later sought assurances that NovoSource had not allowed TPOC or any other third party to access NovoSource's design-history files. Cothrel responded by telling NovoSource's counsel to make no representation regarding whether TPOC had access since several former employees could have shared something with Harris. At that time, Cothrel did not disclose to Rhododendron that he had shared the files with Harris. In April 2015,

Rhododendron again expressed concern that NovoSource had allowed TPOC to use the design-history files. Cothrel ultimately disclosed his transmission of the files to Rhododendron principal Doug Hawkins while out for a drink in September 2017.

{¶ 12} By July 2015, NovoSource had ceased to operate and went into receivership. In the summer of 2017, the receiver sold NovoSource's assets to Rhododendron in satisfaction of the $3 million cognovit judgment. Rhododendron filed its initial complaint in the above-captioned case in December 2017. Thereafter, Rhododendron filed first and second amended complaints. Portions of the second amended complaint later were voluntarily dismissed. Rhododendron also filed a motion to compel discovery, and the defendants filed a Civ.R. 12(B)(6) motion for partial dismissal. While the motion to compel and the Civ.R. 12(B)(6) motion remained pending, the parties filed cross-motions for summary judgment on Rhododendron's remaining claims.

{¶ 13} On May 15, 2020, the trial court sustained the defendants' motion for summary judgment and overruled Rhododendron's competing motion. In support of its decision, the trial court incorporated by reference and adopted all of the defendants' summary judgment briefing and arguments. The trial court amended its summary judgment order nunc pro tunc on May 18, 2020 to make clear that it had entered summary judgment on all remaining counts of Rhododendron's second amended complaint. The trial court's entry of summary judgment included Civ.R. 54(B) certification due to the existence of one or more remaining counterclaims or third-party claims by the defendants. This timely appeal followed.

{¶ 14} In its first assignment of error, Rhododendron challenges the trial court's

entry of summary judgment against it without first ruling on its pending motion to compel discovery.

{¶ 15} The record reflects that Rhododendron moved to compel the production of certain documents on July 30, 2019. Thereafter, the defendants moved for summary judgment in January 2020. The motion to compel remained pending when the trial court sustained the defendants' summary-judgment motion on May 15, 2020. On appeal, Rhododendron's entire substantive argument regarding the motion to compel is as follows: "In failing to rule on Rhododendron's Motion to Compel, the trial court denied [Rhododendron] its procedural due process rights. Rhododendron was denied the opportunity to explore a critical issue in the case and the opportunity to obtain perhaps dispositive discovery materials. Consequently, the trial court's omission constitutes reversible error." (Appellant's Brief at 14.)

{¶ 16} We find Rhododendron's argument to be unpersuasive. "When a trial court enters summary judgment without expressly determining a pending motion, the motion impliedly is denied. * * * Where the pending motion is a motion to compel, the party opposing summary judgment must seek a delay of the trial court's ruling pursuant to Civ.R. 56(F) or otherwise include in their response to the motion for summary judgment some allegation of prejudice as a result of the trial court's failure to rule." *Polivka v. Cox*, 10th Dist. Franklin No. 02AP-1364, 2003-Ohio-4371, ¶ 23.

{¶ 17} Here Rhododendron has not identified anywhere in the record where it sought a delay under Civ.R. 56(F) or otherwise alleged prejudice as a result of the trial court's considering the defendant's summary-judgment motion without first resolving the motion to compel. This failure by Rhododendron "precludes a finding of prejudice and

results in waiver of the issue." *Boulder Capital Group, Inc. v. Lawson*, 2d Dist. Clark No. 2014-CA-58, 2014-Ohio-5797, ¶ 34. The first assignment of error is overruled.

{¶ 18} In its second assignment of error, Rhododendron contends the trial court erred in entering summary judgment against it on counts three and four of the second amended complaint. These counts alleged violations of the Ohio Uniform Trade Secrets Act, R.C. 1333.61, et seq. With regard to count three, Rhododendron challenges the entry of summary judgment on its claim against Harris for misappropriating trade secrets. With regard to count four, Rhododendron challenges the entry of summary judgment on its claim against Rynearson and Diamond for misappropriating trade secrets.

{¶ 19} Rhododendron advances six arguments under its second assignment of error. First, it contends the trial court engaged in impermissible fact-finding and failed to apply Civ.R. 56 properly. Second, it claims the trial court erred in its application and analysis of the Ohio Uniform Trade Secrets Act concerning disclosures and secrecy measures. Third, it asserts that genuine issues of material fact exist as to whether NovoSource voluntarily disclosed its design-history files to Harris and, in so doing, destroyed trade-secret protections or whether the existence of adequate secrecy measures preserved trade-secret protections. Fourth, Rhododendron argues that the trial court erred in overruling its own competing motion for summary judgment. Fifth, it maintains that the trial court erred in its analysis and application of the Ohio Uniform Trade Secrets Act because "use" is a method of misappropriation. Sixth, it contends genuine issues of material fact exist as to whether count four is time barred as against Diamond.

{¶ 20} We begin our analysis with the language of the Ohio Uniform Trade Secrets Act, R.C. 1333.61, et seq. It defines a "trade secret" as follows:

(D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D)

**{¶ 21}** The trade-secrets act defines "misappropriation" as any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from

or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

R.C. 1333.61(B).

{¶ 22} The trial court disposed of Rhododendron's complaint by entering summary judgment in favor of the defendants-appellees. We review a trial court's ruling on a summary-judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. Under Civ.R. 56(C), a movant is entitled to summary judgment when the movant demonstrates "that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 617, 687 N.E.2d 735 (1998).

{¶ 23} In its first argument under the second assignment of error, Rhododendron contends the trial court engaged in impermissible fact-finding when it adopted and incorporated by reference the entirety of the appellees' summary judgment filings. Rhododendron notes that summary judgment motions themselves are not "evidence." Rhododendron argues that the trial court could not have adopted the appellees' legal arguments as its own without also adopting the appellees' version of the facts and construing those facts in favor of the appellees. To the extent that the trial court did so,

Rhododendron contends it violated Civ.R. 56(C).

{¶ 24} Upon review, we find the foregoing argument to be unpersuasive. As an initial matter, the trial court's act of entering summary judgment by adopting the appellees' entire summary judgment filings is not particularly helpful. But it also does not constitute per se reversible error. We have recognized that a trial court is not required to issue findings of fact or conclusions of law when ruling on a summary judgment motion. *Huber v. Mues*, 2d Dist. Montgomery No. 2011-CA-75, 2012-Ohio-2540, ¶ 8-9. In *Huber*, we affirmed the trial court's entry of summary judgment where, as here, it adopted the reasoning in the appellee's summary judgment memorandum.

{¶ 25} We note too that the trial court did make limited findings to explain why it granted the appellees summary judgment on counts three and four of the second amended complaint. These findings were sufficient to facilitate appellate review. In particular, the trial court reasoned:

Counts III and IV of Plaintiff's Second Amended Complaint for violation of Ohio's Uniform Trade Secrets Act are HEREBY DISMISSED WITH PREJUDICE because NovoSource voluntarily disclosed its design history files to Harris/TPOC thereby destroying any trade secret protection that might otherwise have existed; NovoSource's purported efforts to maintain secrecy of its design history files are objectively unreasonable in light of voluntarily providing those files to Harris/TPOC for their own use; Plaintiff's OUTSA claim against Rynearson is unsupported by any credible evidence that Rynearson acquired or disclosed the design history files with any knowledge that they were acquired by improper means; Plaintiff's

OUTSA claim against Diamond is unsupported by any evidence that Diamond acquired or disclosed any of NovoSource's purported trade secrets and, in any event, the claim is time-barred.

(May 15, 2020 Order at 2.)

{¶ 26} As for whether the trial court erred in adopting the appellees' arguments, resolution of that issue depends on whether those arguments were predicated on undisputed material facts. Under its first argument, Rhododendron asserts in the abstract that genuine issues of material fact exist. But it does not identify any particular factual dispute that the trial court overlooked. Consequently, we will proceed to Rhododendron's remaining arguments, which are more specific.

{¶ 27} Rhododendron's second argument challenges the trial court's finding that NovoSource's voluntary disclosure of its design-history files to Harris/TPOC destroyed trade-secret protection that otherwise existed. Construing the evidence most strongly in its favor, Rhododendron argues that the limited, one-time disclosure occurring in this case did not destroy the trade-secret status of the design-history files or, at a minimum, that a genuine issue of material fact exists. For their part, the appellees insist that NovoSource's disclosure to Harris for his own benefit did destroy trade-secret protection for the design-history files as a matter of law.

{¶ 28} Upon review, we find this aspect of Rhododendron's argument to be persuasive. As a threshold matter, we agree with Rhododendron that a trier of fact could find that NovoSource's design-history files at least initially qualified as a "trade secret" under R.C. 1333.61(D). The real issue raised by Rhododendron's second argument is whether Cothrel's act of disclosing those files to Harris destroyed existing trade-secret

protection as a matter of law. The plain language of R.C. 1333.61(B) persuades us that it did not. As set forth above, R.C. 1333.61(B) generally defines misappropriation of a trade secret to include improper acquisition, disclosure, *or* use of a trade-secret of another.

{¶ 29} We see no genuine issue of material fact as to whether Cothrel voluntarily disclosed the design-history files to Harris, and Harris likewise did not improperly acquire them as a matter of law. Indeed, Cothrel's own deposition established that he elected to give Harris the files to help Harris "advance his post-NovoSource life" and "get started charting his own destiny away from NovoSource." (Cothrel depo. at 232, 236.) We note, however, that R.C. 1333.61(B) also defines misappropriation to include the improper "use" of a trade secret. If Cothrel's disclosure to Harris necessarily negated the files' trade-secret status, then it would not be possible for Harris to misappropriate the files by improperly using them. By defining the misappropriation of a trade secret to include impermissible "use" by a person to whom the secret has been disclosed, the statute recognizes that the disclosure of a trade secret to a single person does not necessarily destroy its trade-secret status.[2] If the rule were otherwise, the information subsequently "used" by the recipient could not be a trade secret.

{¶ 30} The foregoing analysis leads directly into Rhododendron's third argument, which lies at the heart of the parties' dispute. Rhododendron contends the design-history files retained trade-secret protection because Harris was restricted or limited in his use of

---

[2] We might reach a different conclusion if Cothrel had made a general *public* disclosure of the design-history files. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret. * * * If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.").

them. Construing the evidence most strongly in its favor, Rhododendron claims a trier of fact reasonably might find such restrictions and limitations to be imposed by fiduciary duty, contract, and an express agreement between Cothrel and Harris.

{¶ 31} To resolve Rhododendron's argument, we turn first to R.C. 1333.61(B)(2), which identifies the circumstances under which a trade secret might be misappropriated through improper "use." As relevant here, R.C. 1331.61(B)(2)(b) defines "misappropriation" to include use of a trade secret without express or implied consent by a person who, at the time of his use, knew or had reason to know that his knowledge of the trade secret "was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]"

{¶ 32} In their motion for summary judgment, which the trial court adopted in full, the appellees claimed that Cothrel voluntarily sent Harris the design-history files "without any restriction on their use." On appeal, Rhododendron challenges this adopted finding by the trial court. Rhododendron argues that a duty to maintain secrecy arose through a fiduciary duty Harris owed to NovoSource based on his status as a member of its board of directors. We note, however, that Cothrel did not sent the files to Harris for use in his capacity as a member of NovoSource's board. Cothrel knew that Harris *would not* be using the files on behalf of NovoSource. To the contrary, Cothrel admittedly sent the files because he knew Harris' company, TPOC, was about to lose its status as a distributor for NovoSource, and he wanted to help Harris start a "post-NovoSource life." In light of Cothrel's decision to send the files knowing that Harris would not use them in his capacity as a NovoSource director, we see no genuine issue of material fact as to whether Harris' fiduciary relationship with NovoSource imposed a duty of secrecy.

{¶ 33} Rhododendron next suggests that an obligation of secrecy arose by contract. This argument relies on a September 2013 non-disclosure agreement ("NDA") between NovoSource and Harris' company, TPOC. We agree with the appellees, however, that this agreement did not govern Cothrel's disclosure of the design-history files. Harris was not a party to the NDA, and Rhododendron's position in this case is that the files were sent to Harris personally, not to TPOC.[3] It is also questionable whether the boilerplate NDA, which purported to cover "all information," was specific enough to preserve trade-secret protection for the design-history files. But most importantly, even if the NDA could apply here, it only covered information disclosed by NovoSource "in furtherance of evaluating the Business Relationship." The NDA defined "Business Relationship" as "a possible business relationship whereby [TPOC] invests in NovoSource's business or engages in some similar transaction." Cothrel's disclosure to Harris had nothing to do with a possible business relationship, investment, or similar transaction between NovoSource and TPOC. Therefore, we see no genuine issue of material fact as to the applicability of the NDA, which was not implicated by Cothrel's disclosure to Harris.

{¶ 34} In our view, the only real issue is whether a trier of fact could find that Harris misappropriated the design-history files by exceeding the scope of use to which he and Cothrel purportedly had agreed. As set forth above, misappropriation under R.C. 1331.61(B)(2)(b) includes using trade-secret information without express or implied consent where knowledge of the trade secret "was acquired under circumstances giving

---

[3] We note, however, that Cothrel sent the files to "Brad Harris/The Progressive Orthopedic Company."

rise to a duty to maintain its secrecy *or limit its use*[.]" (Emphasis added.) Even if no fiduciary duty or NDA imposed secrecy restrictions, Harris still could be liable for trade-secret misappropriation under R.C. 1331.61(B)(2)(b) if his *use* of the trade secret was without Cothrel's express or implied consent and Harris knew or had reason to know that he had acquired the information under circumstances obligating him to limit his use of the information. On this issue, the trial court erred in making an adopted finding that Cothrel gave Harris the design-history files without imposing "any restriction on their use."

{¶ 35} In its appellate brief, Rhododendron cites evidence establishing a genuine issue of material fact as to whether Cothrel and Harris had agreed to limitations on Harris' use of the design-history files and whether Harris exceeded those limitations. In his deposition, Cothrel claimed the purpose of his disclosure was to enable Harris to use the "template" of the design-history files "to get things in motion." According to Cothrel, Harris was "incapable of handling design development and progression through the regulatory traps of an orthopedic implant." (Cothrel depo. at 226, 235.) That being so, Cothrel sent Harris the files "to communicate to [Harris] that this is what [a 510(k)] looks like, this is the package you have to put together. This is the testing you have to do. This is what a design-history file looks like." (*Id.* at 224.)

{¶ 36} Cothrel explained that he never intended for Harris to use NovoSource's design-history files to submit a "mirrored 510(k)" to the FDA for products essentially identical to NovoSource's. Moreover, Cothrel testified that Harris understood and agreed that he was only permitted to pursue *non-identical* products that *were not* based on a mirrored 510(k). (*Id.* at 223-224, 227.) Based on conversations with Harris leading up to Cothrel's disclosure of the design-history files, it "never entered [Cothrel's] mind" that

Harris subsequently would take NovoSource's files and submit them to the FDA as part of a mirrored 510(k) application. (*Id.* at 231, 235-236.) Nevertheless, Harris did use the NovoSource files to obtain mirrored 510(k) clearances for TPOC through the FDA. (*Id.* at 238-239.) Cothrel testified that Harris' actions with regard to the FDA submission violated a "verbal agreement" the two men had when he gave Harris the files. (*Id.* at 329.)

{¶ 37} Viewed most strongly in Rhododendron's favor, the evidence concerning Harris' use of NovoSource's design-history files establishes a genuine issue of material fact as to whether he misappropriated a trade secret under R.C. 1331.61(B)(2)(b) by knowingly using the files without Cothrel's consent in a way that violated a duty to limit his use of the files. A trier of fact reasonably might find the existence of such a duty based on Cothrel's testimony about an oral agreement between Cothrel and Harris limiting Harris' use of the files. The credibility of Cothrel's testimony on that issue is a matter for the trier of fact to resolve. Therefore, the trial court erred in entering summary judgment on counts three and four insofar as genuine issues of material fact exist regarding Harris's exceeding the permissible scope of his use of the design-history files on behalf of TPOC.

{¶ 38} In its fourth argument, Rhododendron contends the trial court erred in overruling its own summary judgment motion. In the course of its argument, Rhododendron suggests that the trial court improperly resolved genuine issues of material fact. At the same time, however, Rhododendron claims it was entitled to judgment as a matter of law because the record demonstrates conclusively that there was no waiver of trade-secret protection when Cothrel disclosed NovoSource's design-history files to Harris.

{¶ 39} We find Rhododendron's fourth argument to be unpersuasive for at least

two reasons. First, as explained more fully in our resolution of Rhododendron's third argument, the record persuades us that genuine issues of material fact exist as to whether Harris misappropriated a NovoSource trade secret through his use of the design-history files. Those genuine issues of material fact preclude the entry of summary judgment for Rhododendron or the appellees. Second, we note that a trial court's denial of summary judgment generally is not appealable. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. For these reasons, we reject Rhododendron's fourth argument.

{¶ 40} In its fifth argument, Rhododendron contends the trial court erred in entering summary judgment in favor of appellees Andrew Rynearson and Jack Diamond on count four of the second amended complaint. In particular, Rhododendron argues the existence of a genuine issue of material fact as to whether Rynearson and Diamond misappropriated NovoSource's design-history files through their improper "use" of the files.

{¶ 41} With regard to Rynearson, the second amended complaint named him as a defendant only "in his capacity as Director of Engineering for The Progressive Orthopedic Company, LLC and Modal Manufacturing Company, LLC." (April 15, 2019 Second Amended Complaint at caption.) Count four alleged that Rynearson was a senior product development engineer at a company identified as "IDMS" when he signed engineering and testing reports submitted to the FDA in connection with Harris' mirrored 510(k) submission. Count four also alleged that Rynearson knew or should have known that the NovoSource IP included in TPOC's 510(k) submissions, which included his prior work for NovoSource, was acquired by improper means. Count four further alleged that Rynearson

and others knew or should have known "that NovoSource did not give express or implied consent for such use," and that Rynearson and others "used and disclosed the NovoSource IP through TPOC's 510(k) submissions to the FDA." As a result, count four alleged that Rynearson was liable for trade-secret misappropriation.

{¶ 42} Upon review, we see no error in the trial court's entry of summary judgment in favor of Rynearson. Because he was sued in his corporate capacity as director of engineering for TPOC and a related company, Modal, the sole basis for imputing liability to him was by way of his employment with one of those companies. In the proceedings below, however, Rynearson averred that he never had been employed by Modal and that he was not employed by TPOC until January 2015. Thus, according to Rynearson's affidavit, he was not an employee of TPOC when Cothrel gave Harris NovoSource's design-history files in August 2014 or when those files were submitted to the FDA (i.e., "used" by Harris/TPOC) later that year.

{¶ 43} Based on evidence of Rynearson's use of both personal and work e-mail accounts around the time of his employment, Rhododendron suggests on appeal that he may have worked for TPOC prior to January 2015. (Appellant's Brief at 28-30.) Having reviewed Rynearson's entire deposition, including his discussion of his personal and work email use, we fail to see how it supports a reasonable inference that he was employed by TPOC prior to January 2015. (*See, e.g.*, Rynearson December 6, 2019 depo. at 14-15, 178, 190-193.) Rhododendron also asserts that Rynearson failed to comply with a discovery request to search his personal email for additional relevant evidence. Assuming that this is true, it does not support a reasonable inference that such a search would have

established Rynearson's employment by TPOC prior to January 2015.[4] Even construing the evidence in Rhododendron's favor, we see no genuine issue of material fact regarding when Rynearson began his employment with TPOC.

{¶ 44} In any event, regardless of Rynearson's employment date, we see no basis for a claim against him on the theory that he knew or should have known NovoSource's design-history files had been acquired by improper means, as alleged in count four. As set forth above, Harris did not acquire the design-history files by improper means. Cothrel voluntarily gave Harris the files. The only real question is whether Harris exceeded the scope of his permissible use of the files in contravention of a purported oral agreement he had with Cothrel. Although we have found a genuine issue of material fact as to whether Harrris misappropriated the design-history files by using them improperly, we see no evidence that Rynearson knew or should have known of any use restrictions imposed by an oral agreement between Cothrel and Harris.

{¶ 45} In his deposition, Rynearson testified Harris already had filed 510(k) applications with the FDA long before Rynearson began his employment with TPOC. After Rynearson started working at TPOC, Harris repeatedly told him the company was contractually entitled to use NovoSource's design-history files for the 510(k)s once NovoSource ceased being able to supply TPOC with inventory. (Rynearson December 6, 2019 depo. at 84-89, 170-172, 221, 246.) Rynearson did not question that explanation, which was outside the scope of his engineering work. (*Id.* at 173.)

{¶ 46} On appeal, Rhododendron claims a genuine issue of material fact exists

---

[4] And if Rhododendron thought additional discovery responses were necessary for it to oppose summary judgment, it could have sought to delay the trial court's ruling pursuant to Civ.R. 56(F).

regarding Rynearson's professed lack of knowledge of any improper use of the design-history files by Harris. In support, Rhododendron first cites deposition testimony from Thomas Smith, who did consulting work for TPOC. On the cited pages, Smith explained that Rynearson told him NovoSource and TPOC "did not depart amicably." (Smith depo. at 108.) Smith also discussed what Rynearson told "multiple" FDA reviewers who later questioned NovoSource's design-history files being part of the TPOC 510(k) submissions from Harris. According to Smith, Rynearson told the FDA representatives: "NovoSource was or is going out of business. Could not supply the product to [TPOC]. Part of a contract that TPOC has with NovoSource stipulating * * * that they would be able to—they would supply the product. And if this product could not be supplied, they had legal capability to submit 510(k)s." (*Id.* at 113.) In short, Smith recalled Rynearson representing to the FDA that TPOC possessed the NovoSource design-history files because of a contract "situation." (*Id.*)

{¶ 47} Smith's recollection is consistent with what Rynearson stated in his own deposition. (*See, e.g.,* Rynearson December 13, 2019 depo. at 13-14.) Rhododendron claims the fact that multiple FDA reviewers asked questions about the presence of NovoSource materials in the applications should have caused Rynearson to know that the design-history files had been acquired through improper means. In our view, this is not a reasonable inference for at least three reasons. First, the design-history files were not "acquired" through improper means. Second, Rynearson's response to the questions apparently satisfied the FDA. Third, we see nothing in the FDA's general inquiries that should have made Rynearson aware of Harris exceeding the scope of an oral agreement Harris purportedly had with Cothrel. Even construing the evidence in a light most

favorable to Rhododendron, it simply is not reasonable to infer from the FDA's inquiries that Rynearson should have known about the alleged Cothrel-Harris oral agreement.

{¶ 48} Rhododendron also suggests that Rynearson's responses to the FDA's inquires "changed" over time. But the record does not support a finding that his responses changed in a meaningful way. Rhododendron cites one reference to a breach of contract by NovoSource and another reference to NovoSource being insolvent. Of course, insolvency by NovoSource is a logical reason for its inability to supply TPOC with inventory in breach of a contract between the companies. In fact, that is precisely what was discussed during Rynearson's deposition. He was asked about an explanation to the FDA involving "NovoSource filing for insolvency and thus having an inability to fulfil its obligation." (Rynearson December 6, 2019 depo. at 245.) Based on our review of the record, we see no error in the trial court's entry of summary judgment in favor of Rynearson.

{¶ 49} Under its fifth argument, Rhododendron challenges the trial court's entry of summary judgment for Jack Diamond. As with its argument regarding Rynearson, Rhododendron claims a genuine issue of material fact exists as to whether Diamond "used" NovoSource's design-history files while having reason to know that Harris had misappropriated them. (Appellant's Brief at 31.) Rhododendron argues at length that Diamond made substantial investments in TPOC and Modal Manufacturing, a company affiliated with Harris and TPOC, and eventually obtained the 510(k) clearances from TPOC. Rhododendron also asserts that Diamond, an attorney, advised Harris and TPOC in the dispute with NovoSource and positioned TPOC's interests against NovoSource both before and after resigning as NovoSource's general counsel.

{¶ 50} Once again, however, we see no evidence supporting a reasonable inference that Diamond misappropriated NovoSource's design-history files through improper use. Assuming, purely arguendo, that any of Diamond's various actions could be found to constitute "use" of the files, we see no evidence establishing a genuine issue of material fact as to whether Diamond knew or should have known that Harris' own use of the files exceeded the scope of an oral agreement with Cothrel. That being so, we fail to see how Diamond himself can be liable for misappropriation through "use" by assisting Harris. Consequently, the trial court did not err in entering summary judgment in favor of Diamond.

{¶ 51} In the sixth argument under its second assignment of error, Rhododendron contends genuine issues of material fact exist as to whether the trade-secret misappropriation claim against Diamond was barred by the applicable statute of limitation. This argument is moot in light of our determination that the trial court properly entered summary judgment for Diamond on the merits of that claim.

{¶ 52} Based on the reasoning set forth above, Rhododendron's second assignment of error is sustained in part and overruled in part. The assignment of error is sustained insofar as we have found a genuine issue of material fact as to whether Harris misappropriated a trade secret under R.C. 1331.61(B)(2)(b) by knowingly using NovoSource's design-history files without Cothrel's consent in a way that violated a duty to limit his use of the files. The genuine issue of material fact involves Cothrel's testimony about the existence of an oral agreement with Harris limiting the permissible scope of Harris' use of the files and Harris' violation of that agreement. In all other respects, the second assignment of error is overruled.

{¶ 53} In its third assignment of error, Rhododendron contends the trial court erred in dismissing with prejudice under Civ.R. 56 two breach-of-contract claims asserted in counts nine and ten of the second amended complaint.

{¶ 54} Rhododendron notes that the trial court dismissed the claims for lack of standing based on arguments raised by the appellees in a prior Civ.R. 12(B)(6) motion to dismiss. Rhododendron argues that, in so doing, the trial court improperly converted the motion to dismiss into a motion for summary judgment. Rhododendron also argues that a motion for summary judgment is not a proper mechanism for asserting lack of standing. It further argues that a dismissal for lack of standing should have been without prejudice rather than with prejudice. Finally, Rhododendron contends a genuine issue of material fact exists as to whether it had standing to sue for breach of contract.

{¶ 55} Upon review, we find Rhododendron's arguments to be unpersuasive. In count nine of the second amended complaint, Rhododendron asserted a breach of contract claim against SCM and TPOC. Rhododendron brought the claim as assignee and successor in interest to the rights of NovoSource. Count nine alleged that SCM/TPOC had breached the terms of a contractual "Forbearance Agreement" with NovoSource by failing to make certain required monthly payments. Count ten of the second amended complaint asserted a breach of contract claim against Harris and TPOC. Rhododendron again brought the claim as assignee and successor in interest to the rights of NovoSource. Count ten alleged that Harris and TPOC had breached a contractual non-disclosure agreement with NovoSource by disclosing trade secrets.

{¶ 56} On May 10, 2019, the appellees moved to dismiss counts nine and ten pursuant to Civ.R. 12(B)(6) on the basis that Rhododendron lacked standing to enforce

the contracts or sue for breach. The appellees noted that Rhododendron was not a party to any of the contracts. They then argued that the contracts were not among the NovoSource assets that Rhododendron acquired. To the contrary, the appellees argued that the contracts explicitly *were excluded* from the NovoSource assets that Rhododendron acquired.

{¶ 57} The May 10, 2019 motion to dismiss remained pending when the appellees moved for summary judgment on January 21, 2020. The appellees specifically sought summary judgment on counts nine and ten, once again arguing that Rhododendron lacked standing to enforce the contracts because (1) Rhododendron was not a party to the contracts and (2) Rhododendron's acquisition of NovoSource's assets explicitly excluded any and all contracts to which NovoSource was a party.

{¶ 58} On May 15, 2020, the trial court filed an order entering summary judgment in favor of the appellees. In so doing, the trial court specifically adopted and incorporated by reference "the authority, analysis, and evidentiary materials" contained in the appellees' motion for summary judgment, which included the argument that Rhododendron lacked standing to enforce the contracts at issue.

{¶ 59} In light of the foregoing, we reject Rhododendron's argument that the trial court improperly converted the appellees' motion to dismiss into a motion for summary judgment. The appellees separately filed a motion to dismiss and a motion for summary judgment. Both motions raised the issue of Rhododendron's lack of standing to enforce the contracts. In its May 15, 2020 order, the trial court made clear that it was resolving the standing issue by ruling on the appellees' summary-judgment motion. Contrary to Rhododendron's assertion on appeal, we see no reason why a lack of contractual

standing cannot be raised and resolved through Civ.R. 56 where no genuine issue of material fact exists. *See, e.g., Asia-Pacific Futures Research Symposium Planning Committee v. Kent State Univ.*, 2016-Ohio-2691, 63 N.E.3d 780, ¶ 26 (11th Dist.) (affirming the entry of summary judgment on the basis that the appellant lacked standing to sue on a contract).

{¶ 60} We also reject Rhododendron's argument that the trial court's dismissal for lack of contractual standing should have been without prejudice. Rhododendron's argument is premised on the notion that a dismissal for lack of standing under Civ.R. 12(B)(6) is not a "merits" determination and, therefore, should be without prejudice to refiling. (Appellant's brief at 39.) Once again, however, the trial court did not dismiss counts nine and ten under Civ.R. 12(B)(6). It entered summary judgment against Rhododendron on those counts.

{¶ 61} Rhododedron cites *A-1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.*, 97 Ohio App. 3d 623, 647 N.E.2d 222 (8th Dist.1994) for the proposition that a Civ.R. 12(B) motion to dismiss is the only permissible way to resolve a "standing" issue. In that case, the Eighth District found a Civ.R. 12 motion necessary because the "standing" issue involved a jurisdictional question rather than a "merits" determination. *Id*. at 626-627.

{¶ 62} In the present case, however, we are unpersuaded that whether Rhododendron could sue for breach of contract involved a jurisdictional question. Unlike jurisdictional standing, contractual standing " 'is assessed in conjunction with the merits of the claim, not as a threshold issue.' " *U.S. Bank Natl. Assn. for Registered Holders of GE Commercial Mtge. Corp., Commercial Mtge. Pass-Through Certificates, Series 2006-*

*C1 v. Courthouse Crossing Acquisitions, LLC*, 2017-Ohio-9231, 101 N.E.3d 1243, ¶ 41 (2d Dist.). "Although lawyers and courts occasionally state informally that an entity has no 'standing' to enforce a contract if that entity is not a party to the contract or a third-party beneficiary to it, such an entity's inability to sue goes to the merits and does not deprive courts of jurisdiction." *Yasuda Fire & Marine Ins. Co. v. Ciraco*, 225 S.W.3d 894, 898 (Tex.App.2007); *see also Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594 (5th Cir.2016) (recognizing that contractual standing involves issues of contract interpretation and goes to the merits of a claim). To the extent that the Eighth District's decision in *A-1 Nursing Care* may be read as reaching a contrary conclusion, we find it unpersuasive.

**{¶ 63}** Finally, Rhododendron contends a genuine issue of material fact exists as to whether it could sue for breach of contract. We disagree. Rhododendron purchased most of NovoSource's assets in 2017. The transaction resulted in the creation of a Fiduciary Bill of Sale dated August 23, 2017. (Exhibit 1 to Rhododendron's Second Amended Complaint.) That document specifically identified which NovoSource assets Rhododendron was purchasing. "Acquired Assets" included, among other things, "all pending legal claims of the Company (whether pending or otherwise), claims, refunds, causes of action, choses in action and rights of recovery with respect to the 'Business, Acquired Assets and Assumed Liabilities.' " (*Id.*) The Fiduciary Bill of Sale expressly stated, however, that "Acquired Assets" "shall not include any Excluded Assets." The Bill of Sale then specified that among the Excluded Assets were "*each and every Contract to which the Company is a party* or by which it is, or the Business of the Company or any of the Acquired Assets are, bound." (Emphasis added.) (*Id.*)

{¶ 64} In short, the assets Rhododendron acquired from NovoSource did not include "Excluded Assets," and the Excluded Assets encompassed "each and every Contract to which [NovoSource] is a party." In the present case, Rhododendron is suing for the breach of contracts with SCM, TPOC, and Harris to which NovoSource was a party. Based on the clear, unambiguous language of the Fiduciary Bill of Sale, those contracts were Excluded Assets and not purchased by Rhododendron. We note too that Rhododendron did not acquire all of NovoSource's legal claims. It only acquired claims "with respect to" NovoSource's "Business, Acquired Assets, and Assumed Liabilities." Because Acquired Assets did not include Excluded Assets, and Excluded Assets encompassed "each and every Contract to which [NovoSource] is a party," we see no genuine issue of material fact as to whether Rhododendron could sue for breach of the contracts at issue.

{¶ 65} In opposition to our conclusion, Rhododendron cites an affidavit from NovoSource receiver Myron Terlecky attached to its own competing summary judgment motion. Thereon, Terlecky avers: "When executing the Fiduciary Bill of Sale and Intellectual Property Assignment as Receiver for NovoSource, Inc., it was understood and intended that Rhododendron Holdings, LLC was assigned all legal claims and rights of recovery that belonged to NovoSource, Inc., including claims for breach of contract." (Terlecky affidavit at paragraph 20, filed on January 21, 2020.) But regardless of Terlecky's intent and belief, Rhododendron could not have been assigned NovoSource's legal claims for breach of contract because all contracts to which NovoSource was a party were *explicitly excluded* from the transaction. Terlecky's averment fails to create a genuine issue of material fact as it is contrary to the language of the Fiduciary Bill of Sale

itself. Where a document is clear and unambiguous, parol evidence may not be used to contradict its terms. *Rhodes v. Rhodes Indus., Inc.*, 71 Ohio App.3d 797, 804, 595 N.E.2d 441 (8th Dist.1991). As a matter of law, Rhododendron had no right to enforce the contracts or sue for breach. Therefore, the trial court properly entered summary judgment against Rhododendron on counts nine and ten. The third assignment of error is overruled.

{¶ 66} In its fourth assignment of error, Rhododendron contends the trial court erred in dismissing with prejudice counts one, two, and fourteen of the second amended complaint pursuant to Civ.R. 56.

{¶ 67} Rhododendron argues that the appellees did not seek summary judgment on counts one, two, and fourteen. Instead, Rhododendron asserts that the appellees moved for dismissal of those counts under Civ.R. 12(B)(6) and that the trial court later improperly converted the motion to dismiss into a motion for summary judgment. This argument lacks merit. The appellees' summary-judgment motion specifically referenced counts one, two, and fourteen and sought judgment in those counts under Civ.R. 56. (January 21, 2020 Memorandum in Support of Summary Judgment at 13-14, 39.) In its May 15, 2020 order disposing of Rhododendron's claims, the trial court noted that the case was before it on the competing summary judgment motions, which included the appellees' arguments about counts one, two, and fourteen.

{¶ 68} Rhododendron's real complaint appears to be that the appellees' summary-judgment motion partially incorporated by reference arguments made in their earlier motion to dismiss counts one, two, and fourteen. But the act of incorporating by reference arguments made in a prior motion to dismiss did not "convert" the motion to dismiss into one for summary judgment. We note too that Rhododendron engaged in the same

practice when its competing summary judgment motion incorporated by reference arguments raised in Rhododendron's memorandum in opposition to the appellees' motion to dismiss. For example, at page 10 of its own January 21, 2020 motion for summary judgment, Rhododendron asserted: "The right of Rhododendron Holdings, LLC to enforce and sue upon the contracts at issue in this case is identified in Plaintiff's May 23, 2019 Memorandum in Opposition to Defendants' May 10, 2019 Motion to Dismiss Plaintiff's Second Amended Complaint[.] * * * Those arguments are specifically incorporated by reference herein by Plaintiff and will not be reproduced in the interests of judicial efficiency." In any event, nothing prohibited either party from incorporating arguments by reference and doing so did not convert a prior motion to dismiss into a motion for summary judgment. The fourth assignment of error is overruled.

{¶ 69} Having sustained a portion of Rhododendron's second assignment of error, we affirm in part and reverse in part the judgment of the Montgomery County Common Pleas Court and remand the case for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

James H. Greer
Matthew M. Suellentrop
Daniel J. Rudary
Hon. Steven K. Dankof