[Cite as *360 N. Main St., L.L.C. v. U.S. Bank Natl. Assn.*, 2025-Ohio-1389.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| 360 NORTH MAIN STREET LLC | : | |
| | : | |
| Appellant | : | C.A. No. 30274 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 03395 |
| | : | |
| US BANK NATIONAL ASSOCIATION | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on April 18, 2025

· · · · · · · · · · ·

MICHAEL P. MCNAMEE & NOLAN P. MCNAMEE, Attorneys for Appellant

TIMOTHY C. SULLIVAN, Attorney for Appellee

· · · · · · · · · · · ·

HUFFMAN, J.

{¶ 1} 360 North Main Street LLC appeals from the trial court's judgment overruling its motion for summary judgment on its claims for declaratory judgment, breach of contract, unjust enrichment, and fraud, and granting summary judgment to its tenant, U.S. Bank National Association. For the following reasons, the trial court's judgment will be

affirmed.

## I. Facts and Procedural History

{¶ 2} Todd Duplain and two others formed 360 North Main Street LLC ("360 North Main") for the purpose of purchasing the real property located at 360 North Main Street, Centerville, Ohio. The company purchased the property for $229,000 on March 12, 2018. *See* Duplain Dep., Ex. F. At that time, the property was subject to a 50-year lease executed in 1970 by Zengel Builders and First National Bank. *See* Duplain Dep., Ex. C; Simonson Dep., Ex. 4. 360 North Main and U.S. Bank are the successors-in-interest to those entities. U.S. Bank operates a bank branch at that location.

{¶ 3} Under the terms of the 1970 Lease Agreement, the rent increased every five years, with the final amount being $11,100 per year. U.S. Bank was also required to pay "all water and sewer rates, taxes, assessments, levies and other charges." Another section of the lease required U.S. Bank to comply with all applicable local, state, and federal laws.

{¶ 4} The 1970 Lease Agreement was to expire on April 30, 2020. However, it would renew for ten additional and consecutive five-year terms, provided that "the Bank and its successor in interest have at all times faithfully and punctually performed each and all of the covenants and conditions of this lease on the part of the Bank." The Bank was required to give at least three months' written notice if it intended to surrender possession at the end of a term. The Bank also had an option to purchase the property if the property owner received a bona fide offer from someone else.

{¶ 5} The 1970 Lease Agreement further specified that the relationship between

the parties was that of landlord and tenant. It stated that "[n]othing contained in this lease shall be deemed or construed by the Bank or Zengel or by any third party to create the relationship of principal and agent or of partnership or of joint venture[.]"

{¶ 6} On February 26, 2020, the parties signed a First Amendment to Lease, which modified, among other things, the term of the lease and the option to renew provisions. Duplain Dep., Ex. D; Simonson Dep., Ex. 5. Under the First Amendment, the lease was extended for two years, beginning on May 1, 2020, and expiring on April 30, 2022. The Bank was granted 24 consecutive options to renew the term of the lease for periods of two years each. The option could be exercised by giving 360 North Main written notice no less than 150 days prior to the end of the then current term. All terms and conditions were to remain the same during each renewal term with the exception of rent, which was specified in a separate provision. In 2021, U.S. Bank notified 360 North Main that it was renewing the lease, extending the lease term until April 30, 2024. Duplain Dep., Ex. E.

{¶ 7} Around the beginning of 2021, Duplain received a notice from the Montgomery County Auditor that the tax valuation of the property for tax year 2020 was $838,830. On February 15, 2021, Duplain filed a complaint against the valuation of real property, seeking a reduction of the tax valuation to $229,000, the 2018 purchase price. Duplain Dep., Ex. F. The Centerville City School District filed a counter-complaint, asking for no reduction in the assessed value. *Id.* On December 6, 2021, the Montgomery County Board of Revision notified Duplain and 360 North Main that the tax valuation would remain $838,830. Duplain Dep., Ex. G.

{¶ 8} On December 15, 2021, Duplain emailed Jeremy Krueger, an accountant in

U.S. Bank's corporate real estate finance department, and Amy Hernesman, accounting manager and Krueger's supervisor, with the following message:

> Amy and Jeremy,
>
> I am your landlord of your branch in Centerville, Ohio at 360 North Main Street.  I am not sure if you two can help me with this but the county assessed value for the property you leased from me has dramatically increased (over $600,000 and more than 3x the previous value). See attached.
>
> US Bank pays the real estate taxes on this building.  I would highly recommend we contest this massive value increase.
>
> Who in your organization handles local real estate tax valuation issues?
>
> Thanks,
>
> Todd Duplain

Hernesman forwarded the message to Assistance Vice President/CRE Project Manager Lynette Simonson, whose duties included overseeing U.S. Bank's tax appeal third-party vendor, Ryan LLC, and the appeal process.  Hernesman asked Simonson to pass Duplain's message along to "Ryan for review."  Duplain Dep., Ex. H.; Simonson Dep., Exs. 6 & 7.

{¶ 9} The same morning, Simonson forwarded Duplain's message to Shawn Lai at Ryan LLC, asking him to "[p]lease review and file an appeal if warranted."  Simonson Dep., Ex. 8.  Lai replied that he had forwarded it to the Ohio team to review.  *Id.*

{¶ 10} On December 21, 2021, Lai emailed Simonson with an update. He noted that 360 North Main had filed an "appeal" that had been unsuccessful and asked her to confirm with the landlord whether "they are proceeding to the next level of appeal." Lai also noted that they could not find any evidence of the 2018 sale of the property. He indicated that they would need more information before determining whether to file an appeal, which would need to be done by an attorney. *Id.* Simonson did not seek additional information from Duplain.

{¶ 11} On December 30, 2021, Duplain emailed Hernesman, with Simonson and Krueger copied, asking "Any update on protesting these taxes?" Duplain Dep., Ex. H; Simonson Dep., Ex. 7. Simonson replied the same day that she would "follow-up. The appeal deadline is 3/31/2022. I have not yet seen a recommendation." Simonson Dep., Ex. 7. Duplain never received a response indicating "if they were going to do anything." Duplain Dep. 115.

{¶ 12} As noted by the trial court, Simonson was mistaken when she wrote that the appeal deadline was March 31, 2022. The appeal deadline was 30 days from the date of the Board of Revision decision, making January 5, 2022, the deadline by which to file an appeal with the Ohio Board of Tax Appeals (BTA).

{¶ 13} Ryan LLC uses the Ryan Law Firm, a separate entity, to assist it in filing tax appeals. On January 5, 2022, an attorney with the Ryan Law Firm in Pittsburgh, Pennsylvania, filed a notice of appeal with the BTA. The notice of appeal listed 360 North Main as the appellant and the deeded property owner; the attorney was listed as the contact person for the property owner. The notice of appeal indicated that the

appellant's opinion of market value was $229,000, and it stated that there was, as evidence, a recent qualifying sale and a formal property appraisal. A hearing was requested. Duplain Dep., Ex. I.

{¶ 14} On February 9, 2022, Lai emailed Simonson: "Our team reviewed this site and we felt there was evidence to support a reduction. The potential tax savings for 1 year is $19,774 or $59,320 over the 3-year cycle (2020/21/22). Please sign and return the attached EL [engagement letter] for the legal team if you agree to proceed with the appeal. The landlord's appeal was unsuccessful and we are filing to the next level, Board of Tax Appeals, and submitting our own evidence." Simonson Dep., Ex. 8. Simonson did not sign and return an engagement letter, and she did not respond to Lai's email.

{¶ 15} Approximately seven months later, Lai followed up with Simonson about the engagement letter, again asking her to sign and return it. About 15 minutes after this email, Lai sent her another, stating: "My apologies, I attempted to recall the below email so you can disregard it. Please sign and return the attached Attorney Authorization Form at your earliest convenience. This will allow the legal team to represent US Bank for the appeal. We do not need the engagement letter." *Id*.

{¶ 16} A week later, Simonson provided a signed attorney authorization letter, authorizing the Ryan Law Firm to represent U.S. Bank in state and local tax litigation. *Id*.; Simonson Dep., Ex. 9. The authorization letter also designated Ryan LLC as its consulting expert with the authority to accept settlement offers.

{¶ 17} A hearing before the BTA was scheduled for November 16, 2022. *See*

Simonson Dep., Ex. 8.   On November 4, 2022, Lai emailed Simonson that the Centerville City Schools Board of Education had proposed valuing the property at $513,955 for 2020 and $229,000 for 2021 and 2022.   *Id.*   The Auditor had agreed, and Ryan LLC recommended U.S. Bank's acceptance.   Lai stated that they would proceed with the settlement unless otherwise instructed.   Simonson responded to Lai that U.S. Bank was "in agreement to proceed with the proposed offer and settlement.   Thank you!"   *Id.*

{¶ 18} Due to the settlement, no hearing was held by the BTA. Rather, on December 12, 2022, the BTA remanded the matter to the Montgomery County Auditor to effectuate the settlement.   Duplain Dep., Ex. J.

{¶ 19} On March 6, 2023, Krueger emailed Duplain, asking if he had paid the real estate taxes.   He explained that when U.S. Bank's third-party vendor had tried to pay, the money was returned because the taxes had already been paid.   Duplain Dep., Ex. K; Simonson Dep., Ex. 10.   Duplain responded:

> I can help here.   Actually, I protested the value of the property (based on my purchase price) and was successful so you are actually due a REFUND of $21,467.23!   Obviously this is good news.   The current value of the property is $229,000 which is dramatically less than the value they were going to increase to.
>
> I am hoping US Bank is willing to share in the tax reduction savings for my efforts and documentation to the County.

*Id.*   Krueger forwarded Duplain's email to Hernesman.   Simonson Dep., Ex. 10.

{¶ 20} The next day, Hernesman forwarded Duplain's email to Isaac Miron at Ryan

and copied Simonson. Hernesman stated in her email: "The email below is from our landlord at Site 2065. This was a location that our 2022 tax payment was returned because the taxes were paid. The landlord is indicating they had an appeal on the taxes and it appears in PropertyPoint that Ryan had an appeal as well. Was Ryan working with the landlord?" Simonson Dep., Ex. 10. Simonson forwarded Hernesman's email to Lai and asked him to provide some insight. *Id.* Lai responded to Simonson, with Miron, Hernesman, and another Ryan employee copied, saying, "I believe that the landlord had filed to the local Board of Review [sic] (BOR) and received no change. USB had the appeal rights for this property and during our review, we recommended that an additional appeal to the Ohio Board of Tax Appeals (BOTA) was warranted. Attached are the stipulations with our attorney, appeal application, and email discussing the landlord's BOR appeal. We were successful in reducing the value at the BOTA [sic] level." *Id.*

{¶ 21} On April 19, 2023, Kruegar emailed Duplain and informed him that he (Krueger) had "reached out to the team that does the RE Tax appeals and we did win an appeal refund. They said they have yet to receive a check from the county for the for the [sic] RE Tax overpayment. Did you receive a check from the county? If so, please send the check payable to U.S. Bank Corporate Real Estate to the address in my signature as we are due 100% of the refund." *Id.* Duplain replied, "I do not have a check, nor have I received one. My hunch is that you have a credit balance. As it relates to the appeal, I am curious who gave you authority to appeal (or have your consultants appeal as an agent) the taxes for a property I own. Pretty sure you didn't have that legal right." *Id.*

Krueger responded that "we'll look into it."  *Id.*

**{¶ 22}** On April 25, 2023, Duplain emailed Krueger and asked for an update on "who gave the bank or the attorney's agency on behalf of 360 North Main Street."  *Id.* Krueger forwarded the message to Simonson.  On May 3, 2023, Simonson emailed Duplain that she was looking into the real estate appeal/refund and would get back to him.

**{¶ 23}** On June 28, 2023, 360 North Main filed a complaint against U.S. Bank in the Montgomery County Court of Common Pleas, seeking a declaratory judgment and raising claims of breach of contract, unjust enrichment, and fraud.  It alleged that it had not granted any authority to U.S. Bank, the bank's attorneys, or the banks agents to appeal the 2020 property tax valuation on its behalf.  360 North Main further asserted that U.S. Bank had forfeited any right to renew the term of the lease due to its unlawful actions.  The 1970 Lease Agreement, 2020 First Amendment to Lease, Board of Revision decision, and the notice of appeal to the BTA were attached to the complaint. U.S. Bank filed an answer, denying the claims and raising several affirmative defenses.

**{¶ 24}** In November 2023, U.S. Bank notified 360 North Main that it was renewing the lease for an additional two-year term ending April 30, 2026.  Duplain Dep., Ex. M. Duplain responded that, due to the breach of contract, he would not execute the requested lease renewal.   Duplain Dep., Ex. N.

**{¶ 25}** After conducting discovery, the parties filed cross-motions for summary judgment.  On August 29, 2024, the trial court granted U.S. Bank's motion on all claims and denied 360 North Main's.

{¶ 26} 360 North Main appeals from the trial court's judgment, raising four assignments of error. The first assignment of error claims that the trial court improperly denied 360 North Main's request for a declaratory judgment. The second, third, and fourth assignments claim that the trial court improperly granted judgment to U.S. Bank on the claims for breach of contract, unjust enrichment, and fraud, respectively.

{¶ 27} In its reply brief, 360 North Main waived its arguments related to unjust enrichment and fraud, stating that "the focus of this appeal belongs with the declaratory judgment and breach of contract claims." We therefore summarily overrule the third and fourth assignments of error and limit our discussion to the first and second assignments of error only. We will address them in reverse order.

## II. Summary Judgment Standard of Review

{¶ 28} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.). "The burden of showing that that no genuine issue exists as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials

in the pleadings but must give specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

**{¶ 29}** Civ.R. 56(C) lists competent material that may be considered when ruling on a motion for summary judgment. "All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made." *Minor v. Allstate Ins. Co.*, 111 Ohio App.3d 16, 19 (2d Dist. 1996), citing *Morris v. First Natl. Bank*, 21 Ohio St.2d 25 (1970).

**{¶ 30}** We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.); *Riverside v. State*, 2016-Ohio-2881, ¶ 21 (2d Dist.) ("When a declaratory judgment action is resolved on summary judgment, an appellate court's review of the trial court's resolution of the legal issues is de novo.") De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2015-Ohio-4297, ¶ 8 (2d Dist.); *Garber v. Ohio Mut. Ins. Co.*, 2024-Ohio-5408, ¶ 13 (2d Dist.).

### III. Breach of Contract Claim

**{¶ 31}** In its second assignment of error, 360 North Main claims that the trial court erred in granting summary judgment to U.S. Bank on its breach of contract claim. The trial court concluded that 360 North Main had not established that U.S. Bank breached

the contract or that 360 North Main incurred damages.

{¶ 32} To prove a breach of contract claim, a party must establish (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. *Lexis Nexis, a Div. of Relx Inc. v. Murrell*, 2022-Ohio-550, ¶ 21 (2d Dist.). The parties agree that they have a contractual relationship, and there is no allegation that 360 North Main has failed to perform.

**A. Breach by U.S. Bank**

{¶ 33} In its complaint, 360 North Main alleged that U.S. Bank breached the lease agreement by, "among other actions, (i) falsely representing itself as the owner of the Property to the Ohio Board of Tax Appeals and/or representing itself as having been authorized by Plaintiff to file and pursue the appeal of the 2020 Evaluation; and (ii) presenting itself and acting as the purported agent of Plaintiff." The essence of 360 North Main's claim is that U.S. Bank violated Ohio law regarding the process for appealing Board of Revision decisions. The trial court found no evidence to support either of 360 North Main's allegations.

{¶ 34} Under R.C. 5717.01, an appeal from a county board of revision decision may be taken by "the county auditor, the tax commissioner, or any board, legislative authority, public official, or taxpayer authorized by section 5715.19 of the Revised Code to file complaints against valuations or assessments with the auditor." R.C. 5715.19(A)(1) permits a tenant of the property owner to file a complaint against valuation, provided that (1) the property is classified as to use for tax purposes as commercial or industrial, (2) the lease requires the tenant to pay the entire amount of taxes charged

against the property, and (3) the lease allows, or the property owner otherwise authorizes, the tenant to file such a complaint with respect to the property.

{¶ 35} The parties do not dispute that the property at issue is classified as commercial and that the lease requires U.S. Bank, the tenant, to pay the property taxes. However, nothing in the lease addresses challenges to the tax valuation of the property. In the absence of language in the lease providing authorization, the terms of the lease did not permit U.S. Bank to file a complaint or subsequent appeal regarding the tax valuations of the property.

{¶ 36} The trial court concluded that it was not required to determine whether 360 North Main gave authorization, outside of the lease, to U.S. Bank to file an appeal with the BTA, "because there is no evidence before the Court that [U.S. Bank] represented to the OBTA that it was the owner of the Property." We agree with the trial court that there is no evidence that U.S. Bank represented that it owned the property. The notice of appeal identified 360 North Main as both the "deeded property owner" and the appellant. U.S. Bank did not appear on the notice of appeal, and there is no evidence that anything else was filed with the BTA in which U.S. Bank identified itself as the property owner.

{¶ 37} In addressing whether U.S. Bank represented itself as having been authorized by 360 North Main to file and pursue the appeal and/or presented itself and acted as 360 North Main's agent, the trial court focused on the relationships between U.S. Bank, Ryan LLC, and the Ryan Law Firm. The trial court emphasized that U.S. Bank left it up to Ryan LLC to decide whether to file the appeal, that neither Simonson nor any other U.S. Bank employee did anything to bind 360 North Main, and that Simonson

believed that the Ryan Law Firm had filed an appeal on behalf of U.S. Bank, not 360 North Main.

**{¶ 38}** While we agree with the trial court's ultimate conclusion, we find that the better approach is to answer the question the trial court did not: whether 360 North Main gave authorization to U.S. Bank to pursue the appeal. The evidence unequivocally reflects that it did.

**{¶ 39}** Under the terms of the lease, U.S. Bank had no agency relationship with 360 North Main, and it was not authorized by the lease to file a complaint to contest the tax valuation of the real property. Duplain, as agent for 360 North Main, the property owner, filed a complaint seeking a reduction of the valuation to $229,000, the 2018 purchase price. On December 6, 2021, when the Board of Revisions certified the value for tax year 2020 as $838,830, 360 North Main had the right to appeal. At that point, U.S. Bank did not.

**{¶ 40}** Nevertheless, on December 15, 2021, Duplain emailed U.S. Bank, informing it of the substantial increase to the tax valuation and stating, "I would highly recommend we contest this massive value increase. Who in your organization handles local real estate tax valuation issues?" Two weeks later, Duplain again emailed, asking "Any update on protesting these taxes?"

**{¶ 41}** Although Duplain asserted in his deposition that he did not intend to authorize U.S. Bank to appeal the tax valuation, we can discern no rational reason for Duplain to have emailed U.S. Bank with those messages except to authorize the bank to proceed with a tax appeal. The only reasonable interpretation of these emails is that

Duplain did authorize U.S. Bank to pursue an appeal from the denial of 360 North Main's complaint to the BTA. Duplain testified that he had assumed an appeal "was a dead issue, and they [U.S. Bank] were not going forward – we were not going forward" when Simonson did not provide a response to his request for an update. Duplain Dep. 60. However, this statement reinforces that Duplain was anticipating that U.S Bank would take some action to appeal the Board of Revision decision and that he was looking for an update on what actions, if any, U.S. Bank had taken in response to his December 15 email. Duplain never communicated to U.S. Bank that he had changed his mind about appealing. *Id.* at 61.

{¶ 42} Duplain's December 15, 2021 email did not specify the method by which U.S. Bank should pursue the appeal to the BTA. The parties have not addressed whether U.S. Bank could have filed an appeal to the BTA under its own name, given that it was not a complainant before the Board of Revision. Regardless, Duplain's authorization necessarily included the ability to act as 360 North Main's agent if that was required to effectuate an appeal to the BTA. In this respect, U.S. Bank did not direct Ryan LLC or the Ryan Law Firm to file the appeal in a particular manner. Rather, it relied on the professional judgment of the attorney handling the appeal. The evidence does not support any reasonable conclusion that U.S. Bank violated R.C. 5717.01, that it lacked authorization to pursue the BTA appeal of the tax valuation, or that it improperly held itself out as an agent of 360 North Main.

**B. Damages**

{¶ 43} We further conclude that the trial court did not err when it determined that

360 North Main failed to present evidence of damages.

{¶ 44} The BTA appeal affected tax years 2020, 2021, and 2022. Duplain stated at his deposition that he learned of the tax valuation settlement in the spring of 2023. Before he realized that the reduction in tax valuation was the result of U.S. Bank's actions as opposed to his own, he lauded the reduction in the valuation. His March 6, 2023 email told U.S. Bank that it was "due a REFUND of $21,467.23! Obviously this is good news. The current value of the property is $229,000 which is dramatically less than the value they were going to increase to."

{¶ 45} When asked at his deposition what damages resulted from U.S. Bank's actions, Duplain testified that the settlement had cost him the potential monetization of the asset. He disagreed that the tax valuation was not a reflection of fair market value. However, Duplain further testified that he had never tried to sell the property and that, at the time he was deposed, he had no intention of listing it for sale within the next three months. He did not recall doing anything to try to refinance the property other than having conversations with banks and investment brokers about the property's value. He could not recall any specific conversations he had with any specific individuals or banks, and did not recall when those conversations occurred. Duplain did not identify any damages resulting from U.S. Bank's filing the appeal with the BTA or its actions during the appeal. Rather, Duplain stated that U.S. Bank's actions had resulted in a loss of trust.

{¶ 46} At oral argument, 360 North Main asserted that it lost the opportunity to negotiate with U.S. Bank to receive a benefit from the appeal of the tax valuation. In his

March 6, 2023 email, Duplain expressed his hope that U.S. Bank would share its tax reduction savings with him. However, when asked about damages at his deposition, Duplain never said that he would have renegotiated the terms of the lease or any other matter with U.S. Bank, and there was no other evidence to support this contention.

{¶ 47} Construing the evidence in the light most favorable to 360 North Main, there was no evidence that 360 North Main incurred any damages due to the alleged breach by U.S. Bank or any evidence as to the amount of any damages. Accordingly, the trial court properly granted summary judgment to U.S. Bank on the breach of contract claim.

{¶ 48} 360 North Main's second assignment of error is overruled.

### IV. Declaratory Judgment Claim

{¶ 49} In its first assignment of error, 360 North Main claims that the trial court erred in denying its request for a declaratory judgment.

{¶ 50} A declaratory judgment action "serves the purpose of eliminating uncertainty regarding legal rights and obligations by allowing parties to seek a judicial determination of their rights, status, or other legal relations under a contract, statute, or other legal instrument, even before any breach has occurred." *Mid-American Fire and Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 8. However, because courts generally cannot give advisory opinions, declaratory judgments can only decide "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Corron v. Corron*, 40 Ohio St.3d 75, 79 (1988).

{¶ 51} For declaratory relief to be an appropriate remedy, the plaintiff must establish three essential elements: (1) a real controversy exists between the parties, (2)

the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Logan v. Champaign Cty. Bd. of Elections*, 2023-Ohio-4688, ¶ 21 (2d Dist.); *Patterson v. State*, 2024-Ohio-5704, ¶ 17 (2d Dist.), quoting *Walker v. Ghee*, 2002 WL 104938, *2 (10th Dist. Jan. 28, 2002). If a party fails to establish any of the requisite showings, the court must dismiss the cause. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 49.

**{¶ 52}** 360 North Main sought declarations that U.S. Bank had breached the lease in two respects and that this conduct had resulted in the loss of its right to renew the lease. Specifically, 360 North Main first sought a declaration that U.S. Bank had "breached the Lease Agreement due to, among other things: (i) violations of Ohio law by falsely representing itself as the owner of the Property to the Ohio Board of Tax Appeals and/or representing itself as having been authorized by Plaintiff to file and pursue the appeal of the 2020 Evaluation; and (ii) presenting itself and acting as a purported agent of Plaintiff, despite having explicitly agreed that no such agency relationship exists by virtue of its tenancy." Second, it sought a declaration that U.S. Bank had "failed to faithfully and punctually fulfill all covenants of the Lease Agreement, and, as such, ha[d] relinquished any and all rights to exercise its options to renew the term of the Lease Agreement."

**{¶ 53}** With respect to the first issue, the trial court found that speedy relief was not necessary to preserve the rights of the parties, because "the facts and allegations giving rise to the declaratory judgment claim are the exact same as the facts and allegations giving rise to the breach of contract claim which is also before the Court on summary

judgment." It further concluded that a declaratory judgment would not terminate the controversy "because there are additional elements that must be proven before relief may be granted on the breach of contract claim." On this basis, the trial court declined to grant a declaratory judgment.

{¶ 54} We disagree with the trial court that the existence of the breach of contract claim on identical facts and allegations precluded a declaratory judgment in this case. 360 North Main asserted not only that the alleged breach of contract caused it monetary damages but also that the alleged breach affected U.S. Bank's ability to renew the lease. While 360 North Main's lack of evidence of damages defeated the breach of contract claim, the existence of a breach would still be relevant to whether U.S. Bank had the right to renew the lease, which was renewable every two years.

{¶ 55} Nevertheless, any error in the trial court's failure to consider the breach issue as part of the declaratory judgment action was harmless. The trial court addressed that issue as part of the breach of contract claim, and it necessarily would have reached the same conclusion in any declaratory judgment analysis. Upon review, we similarly conclude, as a matter of law, that U.S. Bank did not breach the lease. Accordingly, the trial court properly denied 360 North Main's request for a declaratory judgment regarding the alleged breaches of the lease.

{¶ 56} As to the second issue, the trial court concluded that the First Amendment to the lease agreement eliminated the requirement that U.S. Bank "faithfully and punctually" perform its obligations under the lease. We agree with the trial court's interpretation.

{¶ 57} When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 11; *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). We presume that the intent of the parties is reflected in the contract's language. *Tera* at ¶ 11; *DiPasquale v. Costas*, 2010-Ohio-832, ¶ 36 (2d Dist.). Courts will give terms their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the agreement. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37.

{¶ 58} A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). On the other hand, "[a] contract is ambiguous where its meaning cannot be ascertained from its terms or where it is susceptible to multiple reasonable interpretations." *McGinnis v. Conley*, 2024-Ohio-482, ¶ 13 (2d Dist.). Whether a contract is ambiguous is a question of law. *Tera* at ¶ 12.

{¶ 59} Under the 1970 Lease, the duration of the lease was 50 years, and the parties agreed to specific rent amounts, which increased every five years. The 1970 Lease also contained an "Option to Renew" provision, which established automatically renewing five-year terms. It read:

Provided, *and on condition that the Bank and its successor in interest have at all times faithfully and punctually performed each and all of the covenants and conditions of this lease on the part of the Bank*, and unless the Bank at least three months prior to the expiration of the term of this lease, shall give

Zengel notice in writing of its intention to surrender possession at the end of the term, this lease will renew itself for ten (10) additional and consecutive five year terms, each at the option of the Bank, unless the Bank at least three months prior to the expiration of any such consecutively renewed five year term shall give Zengel notice in writing of its intention to surrender possession.

(Emphasis added.)

{¶ 60} The First Amendment expressed that "Landlord and Tenant desire to amend the Lease to alter certain provisions thereof on the terms and conditions hereinafter set forth." Paragraph 1 of the First Amendment modified the former Duration of Lease and Option to Renew provisions, stating:

1. Term

a. The term of the Lease shall be extended for a period of two (2) years commencing on May 1, 2020, and expiring on April 30, 2022 ("the First Amendment Term").

b. Tenant shall have twenty-four (24) consecutive options to renew the term of the Lease for periods of two (2) years each. Tenant may exercise each renewal by giving Landlord written notice no less than 150 days prior to the end of the then current term. All terms and conditions shall remain the same during each renewal term with the exception of rent which shall be as set forth below.

Paragraph 13, entitled Ratification, states that "[a]ll of the terms of the Lease, as amended

hereby, are ratified and confirmed."

**{¶ 61}** 360 North Main asserts that the "faithful and punctual" performance requirement was complementary to the amended Option to Renew terms and, consequently, was part of the ratified terms from the 1970 Lease. However, the condition that the Tenant/U.S. Bank faithfully and punctually perform its obligations under the lease was a condition on the bank's right to automatic renewal under the original lease terms. Automatic renewal was eliminated in its entirety by the First Amendment and replaced with a requirement that U.S. Bank affirmatively exercise its option to renew. The renewal terms of the First Amendment were clear and unambiguous, and nothing in Paragraph 1 required faithful and punctual performance of the covenants and conditions of the lease in order for U.S. Bank to renew the lease. As stated by the trial court, "if the parties had wished for full compliance with the terms and conditions of the lease to be a prerequisite to Defendant exercising its option to renew, the parties could have included such language within the Amendment."

**{¶ 62}** 360 North Main's first assignment of error is overruled.

### V. Conclusion

**{¶ 63}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.